## GEORGE F. SCHNACK *v.* THE CITY AND COUNTY OF HONOLULU.

### No. 3098.

ARGUED MAY 14, 1957.  DECIDED SEPTEMBER 9, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Plaintiff is owner of land on the waikiki side of Nuuanu avenue, between Beretania street and Kukui street, Honolulu. The land is within "Improvement District No. 80 Central Business Area Off-Street Parking in the Congested Downtown Section of the City of Honolulu," and is designated as Lot 243 of such improvement district. It contains an area of 10,494 square feet, with a frontage of approximately 78 feet on Nuuanu avenue and a depth of approximately 135 feet.

Under Ordinance No. 1301 of the City and County of Honolulu, the board of supervisors found that Lot 243 was or would be specially benefited by the construction of off-street parking areas in the improvement district to the extent of $4,495.22 and levied an assessment in that amount against the lot. The assessment was at the rate of 43 cents per square foot. The amount of the assessment is now a lien on the lot.

Plaintiff brought this action to have the lien vacated and his title to Lot 243 quieted on the ground that the assessment is illegal. The circuit court dismissed the action. The case is before this court on appeal by plaintiff from the judgment of the circuit court.

In the case of *Schnack* v. *City and County of Honolulu,* 41 Haw. 219, we held that the establishment of an improvement district is a legislative function which is not reviewable by the courts unless fraud, illegality, abuse of discretion or mistake is alleged and shown; that the determination of the existence of special benefits is a question of fact for legislative determination and the courts will disturb such determination only where it is palpably arbitrary, grossly unjust and confiscatory; and that the findings of a trial judge will not be disturbed on appeal where there is more than a scintilla of evidence to sustain them.

We reiterate and reaffirm our holding in that case. However, we deem that the evidence in this case shows that the board of supervisors abused its discretion and that its action was palpably arbitrary, grossly unjust and confiscatory in the respect hereinafter shown. For this reason we reverse the judgment of the circuit court.

The board of supervisors assessed plaintiff's lot to its entire depth, that is, to a depth of approximately 135 feet. It assessed other property, adjacent to or in the immediate vicinity of plaintiff's lot and similar in usage and all other

respects with plaintiff's lot, to a depth of only 100 feet or less. No reason is apparent for the inclusion of plaintiff's lot in the assessment beyond a depth of 100 feet.

Courts in some jurisdictions are authorized by statute to modify the determination of legislative bodies in connection with assessments for improvements if such determination is arbitrary. Courts in this jurisdiction have no such power. Here the power of modification is lodged solely in the board of supervisors. Section 153-18 of the Revised Laws of Hawaii 1955 provides: "No delay, mistake, error, defect, or irregularity in any act or proceeding authorized by this chapter shall prejudice or invalidate any assessment; but the same may be remedied by subsequent or amended acts or proceedings and, when so remedied, the same shall take effect as of the date of the original act or proceeding. If in any court of competent jurisdiction any assessment made under this chapter is set aside for irregularity in the proceedings, the board may, upon notice as required in making an original assessment, make a new assessment in accordance with the provisions of this chapter."

This opinion is limited in its application to plaintiff's lot. Lot 242, owned by Yee Chan Shee, is in an identical situation as plaintiff's lot. However, the owner of Lot 242 did not file any protest to the creation of the improvement district or to the amount of the assessment with the board of supervisors in the proceedings preliminary to the enactment of Ordinance No. 1301. She is now precluded from recourse to the court under the provisions of section 153-15 of the Revised Laws of Hawaii 1955 which states that after the enactment of the assessment ordinance the amounts of the several assessments incorporated in the ordinance and "not previously objected to shall be conclusively presumed to be just and equitable and not in excess of the special benefits accruing or to accrue by reason of the

improvements to the specific property assessed."

Other owners who had filed their protests with the board may not now complain because of another provision in the statute. Section 153-31 of the Revised Laws of Hawaii 1955 provides that no action to question the validity of any assessment authorized under the statute relating to improvements by assessments shall be maintained unless such action is begun within thirty days of the enactment of the assessment ordinance.

Plaintiff preserved his right to seek relief in court by filing protests with the board of supervisors and bringing this action within the time limited by statute.

Arbitrariness of the action of the board of supervisors with respect to plaintiff's lot is apparent upon examination of the sketch on the next page.

On the sketch, the boundary of Improvement District No. 80 mauka of Beretania street is shown by a dark line. Plaintiff's lot is the shaded area. It is within a radius of 500 feet from Parking Site No. 1. The board of supervisors determined that any business property within a radius of 500 feet from a parking area was specially benefited by the improvement. The circuit court found such determination was supported by the evidence in the case and we agree.

It will be noted that on the mauka side of Beretania street between River street and Kaumakapili lane, all property was assessed to a depth of 100 feet, except the protrusion in Lot 162 at the corner of River street and Beretania street. In explaining the reason for the exclusion of the property in the rear of the assessed area from the improvement district, George K. Houghtailing, planning director of the City and County of Honolulu, testified: "That whole area now is developed as a tenement area. There are no retail shops there. It is a run-down area. We couldn't justify a special benefit in looking at the area

as it exists or in the foreseeable future. Furthermore, I
might also point out that if you look at that area, there
are narrow streets going in there. It doesn't induce any
type of retail business to go into that narrow area." He
explained the exclusion of the area protruding into Lot
162 as follows: "That jog was made because this area,
this particular lot, has no frontage on Beretania street.
It is used as a tenement. It only has access to a walkway
in the rear."

The three lots fronting on Beretania street between
Kaumakapili lane and Nuuanu avenue, being Lots 169, 170
and 171, were assessed to a depth of 80 feet or less. Lots
172 and 173, fronting on the ewa side of Nuuanu avenue,
were also assessed to a depth of less than 100 feet. Lots
167 through 173, together with the areas to the rear thereof
marked E, F and G, all belong to Bishop Estate. These
lots were assessed to a depth of 100 feet or less on the basis
of their usage for retail business purposes. Property line
was not taken into consideration. The planning director
testified as follows:

"Q And doesn't the Bishop Estate also have the
frontage from Beretania along Nuuanu and on up to
Kapena lane on the Ewa side of Nuuanu?

"A Along Nuuanu avenue, we took and assessed all
of this Bishop Estate property fronting Nuuanu. We
excluded the area where there is tenements, run-down
tenements that should be torn down now.

\* \* \*

"Q Why wasn't a straight line run right across an
even 100 feet?

"A Because I think I explained the object as a
benefit that was derived and the use of the property
as general retail business.

"Q Did you take the store fronts or how do you
explain that?

"A The use of the property. The majority use of the property insofar as retail use and that shows definitely along Beretania street and Nuuanu street as outlined by that boundary. There were benefits in there.

"Q Was that the store line or what made that line?

"A It was usable frontage."

The remaining lots on the ewa side of Nuuanu avenue, that is, Lots 174 and 175, were also assessed to a depth of less than 100 feet. As a matter of fact Lot 175 was assessed only to a depth of 47.69 feet along Kapena lane. Here property line was the determining factor. Lot 174 is owned by G. W. K. Tang and Lot 175 is owned by Lucille K. S. Parsons. Again, the testimony of the planning director may be quoted:

"Q I will call your attention to the area up on the mauka-ewa corner of Kapena lane and Nuuanu avenue, which indicates a depth of 47.69 feet frontage on Kapena lane, marked Parcel 9. What did you do there?

"A The basic frontage is on Beretania street and the extreme boundary is along Kapena lane. But the greater frontage is along Nuuanu avenue, which is a very desirable street to bring traffic in and out of the core.

"Q Why did you run in only 40?

"A Because that was the boundary of the property that fronts on Nuuanu avenue."

To summarize, what the board of supervisors did with respect to the area mauka of Beretania street and ewa of Nuuanu avenue was as follows:

(a) It determined that the maximum depth to which any property would be benefited was 100 feet.

(b) If any person owned a property which extended beyond a depth of 100 feet and the use of such property for retail business purposes extended to a depth of 100 feet, it assessed such property to a depth of 100 feet even

though such action left a small unassessed remnant. Note Lots 162, 163, 164 and 165, which left remnants A, B, C and D.

(c) If any person owned a property which extended beyond a depth of 100 feet but the existing use for retail business purposes extended to a depth of less than 100 feet, it assessed such property only to the extent of such existing use. Note Lots 169, 170, 171, 172 and 173.

(d) If any person owned a property which extended to a depth of less than 100 feet, it assessed such property to the property line. Note Lots 174 and 175.

In this area the board applied certain formulas and applied them consistently. We may not entirely agree with the formulas. For instance, question may be raised as to whether the board should have adopted the formula set forth in paragraph (c) above. If a property was owned by one person and extended beyond a depth of 100 feet, should it not have been assessed to a depth of 100 feet regardless of existing use? However, we cannot say that the board was wrong. We think that the action was within the discretion of the board.

We shall now turn to the area on the waikiki side of Nuuanu avenue and examine the situation there.

Lot 244 is assessed only to a depth of 100 feet. It is a part of the property owned by Chong K. Sing Estate. There is a remnant, marked I on the sketch, which is not assessed.

Lot 241 is also assessed only to a depth of 100 feet. It is a part of the property owned by F. S. Angco and wife. There is a remnant, marked H on the sketch, which is not assessed.

In assessing Lots 244 and 241 only to a depth of 100 feet, the board of supervisors followed the same formula that it used in assessing the property mauka of Beretania street, between River street and Kaumakapili lane.

Plaintiff's property, Lot 243, remains to be considered. It was assessed not to a depth of 100 feet but to its entire depth of approximately 135 feet. This lot is no different from any property which was assessed to a depth of 100 feet. The front portion of this lot is used for retail business purposes. There are tenements in the rear. The planning director justified the inclusion of plaintiff's lot to its entire depth in the following testimony:

"Q Do you know that those are tenements in the rear?

"A Probably.

"Q It has been disclosed that in back of these stores are tenements. I note that you list and inclose in there property 135 feet. You probably include the tenements.

"A I said in some instances, but yet I think our action can be justified. The normal business depth is about 100 feet and where the property owners own practically the whole thing, and where you have a 35-foot remnant, with a frontage on Nuuanu Avenue, that is a desirable business use as rental.

"Q In this particular instance you did not exclude the rear because it was tenement?

"A I think the property, as we say, the property depth was not beyond 100 feet. About 35-foot remnant.

"Q 35 feet.

"A But they could use that very definitely and very conveniently for business, property fronting on Nuuanu avenue, which is a wide street."

In other words, in this particular case, according to the planning director, an area beyond a depth of 100 feet was included in the improvement district because (a) such area was only a remnant and (b) such area could be very definitely and very conveniently used for business.

If the position of the planning director, that a remnant should be included, is sound, why were remnants A, B, C

and D not included with Lots 162, 163, 164 and 165?

Again, if the possibility of development for business use was the basis for inclusion, why was remnant H not included with Lot 241? Remnant H at least fronts on a lane. The rear of Lot 243 does not abut on any lane or passageway. The areas to the rear of Lots 167 and 168 front on Smith street, a public highway which is 50 feet wide; the same owner owns Lot 167 and 168 and the areas in the rear; and yet the lots were assessed only to a depth of 100 feet. We see no rational basis for assessing plaintiff's lot to its entire depth of approximately 135 feet, when remnants in the rear of Lots 162, 163, 164 and 165 were not assessed and the assessment of Bishop Estate property, Lots 167 through 173, was limited to a depth of 100 feet or less.

The same criticism may be directed with respect to Lot 242. However, as previously stated, the owner of Lot 242 may not now complain because she did not preserve her right to do so.

In *Road Improvement District No. 1 of Franklin County, Arkansas* v. *Missouri Pacific Railroad Company,* 274 U. S. 188, the Supreme Court of the United States considered an assessment against the railroad company under a statute of Arkansas which created a road district. The assessment against the railroad company was based not only on its real property in the road district but also on rolling stock and other personal property. All other assessments in the district were based on real property alone. The assessment against the railroad was $75,686, or 13.2 per cent of the total benefits assessed to the property in the district. The railroad owned only eight-tenths of one per cent of the land in the district. It sought an injunction against the collection of the assessment on the ground that it was plainly arbitrary and unreasonably discriminatory. The assessing authority defended on the

ground that the legislative action in confirming the assessment was controlling and that if the assessment was excessive, either in itself or when compared with the assessments against other property, it should not be wholly set aside but reduced to the extent of the excess. The court held: "Our conclusion is that the assessment against the railroad is unreasonably discriminatory in so far as it is based on personal property, and in this respect violates the equal protection clause of the Fourteenth Amendment, and that it is otherwise so excessive as to be a manifestly arbitrary exaction and in violation of the due process of law clause of the same amendment." However, it found that some benefits accrued to the railroad. With respect to the request that the court reduce the assessment to a proper sum, the court stated: "But as, on the present showing, it appears that an assessment of some benefits — in an amount certainly below $15,000.00 — would be justified, the way should be left open for making a new or revised assessment. The defendants ask, if the present assessment be held excessive, that it be reduced in this suit to a proper sum. But to this we do not assent. The state statute commits the assessing of benefits to a special nonjudicial board of assessors, and authorizes that board, when requested by the commissioners of the district, to revise their assessments by 'increasing or diminishing the assessment against particular pieces of property as justice requires.' * * * The better course is to leave the making of a substituted or revised assessment to that board."

Reversed.

*Ferdinand Schnack* and *Harold C. Schnack* for plaintiff-appellant.

*Norman K. Chung,* City and County Attorney, and *Hiromu Suzawa,* Deputy City and County Attorney, for defendant-appellee.