TERRITORY OF HAWAII, BY EDWARD N. SYLVA, ITS ATTORNEY GENERAL *v.* MARY A. MENDONCA, FRANCIS K. SYLVA, EDWARD N. SYLVA, TRUSTEES UNDER THAT CERTAIN DEED OF TRUST DATED JANUARY 2, 1929, AND RECORDED IN THE BUREAU OF CONVEYANCES AT HONOLULU, IN LIBER 995, PAGE 101.

No. 4156.

September 20, 1962.

Tsukiyama, C.J., Wirtz, J., Circuit Judge Hawkins, in Place of Cassidy, J., Disqualified, Circuit Judge Hewitt, in Place of Lewis, J., Disqualified, and Circuit Judge Jamieson, in Place of Mizuha, J., Disqualified.

84

OPINION OF THE COURT BY WIRTZ, J.

This is an appeal from the judgment entered in the Circuit Court of the First Circuit in an eminent domain proceeding brought by the plaintiff-appellee, herein referred to as the Territory, to acquire a parcel of land owned by appellants, herein referred to as the Mendonca Estate, for the construction of "the Kalihi Valley Road, Federal Aid Secondary Project No. S-0630(1)," known as Likelike Highway. Under its petition, filed on September 8, 1954, the Territory sought to condemn a 118,073 square foot strip through a larger tract of land owned by the Mendonca Estate, thus cutting the remaining land into two parts, "together with all of those certain abutter's rights or easements of vehicle access appurtenant to the remaining lands."[1] One of the findings of fact made by the trial judge was that "the highway contemplated by said condemnation in this action is, and will be, a limited access highway—that is to say, access to said highway will be limited to such cross streets or entrances as shall be designated by the Territorial Highway Department, pursuant to law, and, in the case of [the remaining lands of defend-

---

[1] The petition discloses that "the public purpose for which Plaintiff has been and is now desirous of purchasing and condemning the aforesaid rights or easements of vehicle access of ingress and egress over and across those certain courses in the metes and bounds description of Parcel 105 and more fully delineated in Exhibit 'A' is to control the highway and to promote the security and safety of members of the public using the highway."

ants], the only vehicular access or right of ingress and egress to and from said highway now contemplated by said improvement from or to any portion of said [remaining lands] will be confined or limited to the entrances delineated on said map, Exhibit A, where Valley View Drive intersects said highway."

. The parties stipulated that the value of the 118,073 square foot strip of land taken by condemnation was $28,435. They have also stipulated that there was no severance damage to the remaining lands of the Mendonca Estate. The evidence was conclusive that the value of benefit to the remaining lands was in excess of $28,435. The trial court found this benefit to be special and entered its judgment on June 24, 1959, "that it having been found by uncontradicted evidence that the taking of said parcel and access rights for the construction of the proposed public improvement caused the market value of the remaining portions of the tract of land not taken by Plaintiff to have a greater aggregate market value after the taking than the value of the entire tract before the taking, said Defendants are not entitled to any compensation for the taking of said parcel and access rights." On this appeal, the Mendonca Estate contends that all of the benefit was general, rather than special, and, as such, not properly deductible from or to be offset against the value of the land taken.

Before attempting to define special benefits and to distinguish them from general benefits the question first arises as to the legal effect to be given to special benefits in an eminent domain proceeding. It was conceded that in this jurisdiction, except in projects involving the widening or realignment of existing ways, the condemning authority in eminent domain has the statutory right to offset special benefits to the remaining land in partial taking cases against the total damages to the property

owner, including the value of the land taken. R.L.H. 1955, §. 8-21.[2] It was further conceded that this setting off of special benefits against the value of the land taken and any damages to the remaining land in partial taking cases not involving the widening or realigment of existing highways does not conflict with the just compensation guaranteed under the Constitution of the United States. *Bauman* v. *Ross,* 167 U.S. 548; see *Norwood* v. *Baker,* 172 U.S. 269. Thus, the only issue presented under this appeal is whether or not the trial court properly decided that the benefit to the remaining lands of the Mendonca Estate was special rather than general.

Initially, the Territory contends that "the matter of special benefits is a question of fact and not a question

[2]"§ 8-21. *Damages assessed, how.* In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned with all improvements thereon shall be assessed, and if any of the improvements are separately owned, the value thereof shall be separately assessed. If the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed, and also how much the portion not sought to be condemned will be specifically benefited, if at all, by the construction of the improvement proposed by the plaintiff. If the benefit shall be equal to the amount of compensation assessed for the property taken, and for damages by reason of its severance from another portion of the same tract, then the owner shall be allowed no compensation, but if the benefits shall be less than the amount so assessed as damages or compensation, then the former shall be deducted from the latter and the remainder shall be the amount awarded as such compensation or damages. * * * In case condemnation shall be for the purpose of widening or realigning any existing highway or other public road, the owner of the property condemned shall be entitled to full compensation for the property actually taken and special benefits shall be considered only in so far as the value of such benefits shall not exceed the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvements in the manner proposed by the plaintiff, i.e., if the special benefits shall be equal to such severance damages the owner of the parcel shall be allowed no compensation except the value of the portion taken but if the special benefits shall be less than such severance damages the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the land taken."

of law. By uncontroverted evidence, the trial court having found that the Mendonca Estate property did receive special benefits, Rule 52(a)[3] of the Hawaii Rules of Civil Procedure should be invoked so as not to disturb its findings."

While it is true that the existence and extent of a benefit is a question of fact, yet the nature and definition of a special benefit, as contrasted with that of a general benefit, is a question of law. Here the facts are not in dispute as to the existence and extent of the benefit. The only question at issue is whether or not under these facts the benefit is special or general as a matter of law. *Cf., City & Co. of Hon.* v. *Barros,* 40 Haw. 615. Deciding this question does not necessarily require that the findings of fact of the trial court be disturbed; rather, it merely requires a determination as to whether the trial court applied the correct principles of law in reaching its conclusion that, under the facts, the benefit in question was special rather than general.

In his findings of fact, the trial judge set forth and adopted the opinion, and the bases therefor, of the two real estate appraisers who testified as expert witnesses that no general benefits resulted from this improvement and consequently the increased value of the remaining land could only be attributable to special benefits.[4] The

---

[3]The rule provides in part that "findings of fact shall not be set aside unless clearly erroneous."

[4]The appraisers concluded that the appreciation of value in the "after" valuation (the remaining land) reflected special benefits only as the general benefits were included in both the "before" and "after" valuations and consequently cancelled out. Apart from legal considerations, the factual bases for this opinion seem open to criticism as being irreconcilable with the "before" and "after" appraisal method utilized. It is difficult, if not impossible, even on the basis of assumption, to include general benefits resulting from the construction of the improvement in the "before" evaluation which is made on the basis that the improvement is non-existent. The "after" value of the remaining land, being market value, necessarily contemplates the existence of the improvement, together with all benefits flowing therefrom, both general

only factual finding as to the nature of the benefit was that "this special benefit is access which otherwise would have had to be paid for by the owners of the land in order to make the highest and best use of it." In his conclusions of law he simply stated that "the benefits accruing to the remainder of said tract by reason of such taking of Parcel 105 and the construction of the proposed improvement were and are special and not general benefits." The trial

and special. These values should reflect market values, which necessarily include all aspects of damages and benefits. *Cf., Territory* v. *Adelmeyer*, 45 Haw. 144, 363 P.2d 979. In that case the "before" and "after" method of evaluation was criticized because of the statutory requirement for the segregation of damages resulting from the taking and special benefits. The same criticism may well apply here in view of the statutory necessity to differentiate the nature of the benefits.

The general benefits referred to by the witnesses as included in both the "before" and "after" values seem to have no reference to the construction of Likelike Highway as illustrated by the testimony of Mr. Lockhart:

"A. The entire Kalihi Valley area since World War II, at the conclusion of World War II, has been in transition to new higher residential use. It was converted from an agricultural, pig farm, chicken raising area into a full blown residential community. There has been many factors that influenced this growth. Probably one of the, probably the single most important factor is the influence of government insured and guaranteed loans on protecting the purchasers so he can buy land and build his house. A typical 1955, $18,000 house could be purchased for possibly $2,000 or less down under an F.H.A. loan and at the time under our V.A. no down payment loans, the veteran could have purchased a home for closing costs only. Other factors that influenced this same growth pattern was Kam IV widening, the activity of the City and County insofar as two new schools, a park and a playground in the Upper Kalihi Valley, the development of Improvement District 95 with good service roads and the highway itself which provided a better and faster access from Honolulu proper into this valley area. These are all influences that have tended to collectively increase property values in Kalihi. These are the sum total, in my opinion, of all general benefits by reason of the tunnel highway and all other influences. These general benefits are directly reflected in the sales data I used. The people were buying and selling with the knowledge of these benefits in their possession. Therefore, if any other value enhancement is detected afterwards, after the taking, but it was not there before the taking, it has to be a special benefit. It cannot be anything else. I have considered all the general benefits in my original comparison data before the taking. They are in there. The general benefits are also in the after value but because they are in the before and after value they both algebraicly [sic] cancel themselves out so if there is an excess of money, it has to be a special benefit."

judge rejected a requested finding of fact as to the increase in value of Valley View Tract lots, holding that the benefits which these lots each received from the improvement, even though they were not situated on the highway, were special benefits, and further holding that "the fact that the neighboring tract, known as the Valley View Tract, abutting on this larger tract in controversy, was also substantially benefited, does not render the benefit to such larger tract general rather than special." Nowhere in the findings of fact or conclusions of law are set forth the legal bases for the conclusion of the trial judge that this benefit of "access" was special rather than general.

In order to better understand the true nature of this "access," unexplained in the findings of fact or conclusions of law, it becomes necessary to review the evidence showing the development of the Mendonca Estate property as well as the adjoining Valley View Tract. The Mendonca Estate land was previously a portion of a larger tract owned by a Mr. Antonio Rodrigues. In 1909, after the death of Mr. Rodrigues, the larger tract was partitioned among his heirs and divided into several acreage lots; each lot was given access to Kalihi Valley Road, a public highway, over a 12-foot roadway known as Numana Road. Title to this 12-foot roadway was held in common by the Rodrigues heirs, the Mendonca Estate being the successor in interest to one of these heirs.

Around 1939, prior to the establishment of effective Planning Commission rules and regulations, the owners of one of these partitioned Rodrigues lots subdivided it. This subdivision was known as Valley View Tract and was adjacent to the Mendonca Estate land. It is served by the following streets: Valley View Drive, Kuahiwi Way, Holua Way, Laelae Way and Kua Pohaku Drive, and Numana Road. In 1952 all of these streets in this

tract, except Numana Road, were accepted by the City and County of Honolulu and dedicated to the Territory as public highways. These streets were all paved but did not have curbs, gutters or sidewalks.

The principal street in this tract is Valley View Drive. It borders upon the Mendonca Estate property at the boundary line between it and the Valley View Tract.

On the date of condemnation approximately fifty per cent of the lots in Valley View Tract had homes upon them. The only access which Valley View Tract, as well as the Mendonca Estate property, had at that time to downtown Honolulu was along Numana Road. This road had been widened and paved where it runs through the Valley View Subdivision but thereafter for approximately three-tenths of a mile until it reached Kalihi Valley Road it was a winding 12-foot wide, poorly improved, country road, which did not admit of passage by two automobiles traveling abreast. Kalihi Valley Road, where Numana terminated, afforded good transportation to downtown Honolulu.

The Mendonca Estate property totalled 31.61 acres. On the date of condemnation the highest and best use of this land fell into three categories: (1) "forest conservation" as to approximately 9½ acres of pali or cliff land; (2) "agriculture" as to about 6½ acres situated above the 500-foot elevation, and (3) "residential" as to the balance. The trial court found, "as a matter of law, that under the laws, ordinances and subdivision regulations in effect on September 8, 1954, the owners of the larger tract could not legally have subdivided said tract using only Numana Road as access thereto, in view of its narrow and substandard character and the fact that it was on that date in part at least a private road." The Mendonca Estate does not take issue with this ruling as it concedes

that the construction of a bridge over Kalihi Stream would have been the economically superior way to develop their tract for subdivision purposes. This bridge "access" was one of the assumptions used by the real estate appraisers in determining the "before value" of the Mendonca Estate property.

The purpose of this condemnation suit was to acquire land for the construction of Likelike Highway, which is the highway connecting Honolulu via the Kalihi tunnels to Windward Oahu. Likelike Highway is a limited access highway. Under and by virtue of the condemnation proceedings, the two parcels of Mendonca Estate property remaining after the condemnation are denied all rights of vehicle access onto Likelike along the whole length of their boundaries abutting on Likelike. However, traffic from Valley View Drive is permitted access onto Likelike and since the remaining Mendonca Estate land which lies below Likelike is situate on Valley View Drive, and Valley View Drive is a public highway, it is thus afforded indirect access via this public street onto Likelike. This access is enjoyed by all the lots of Valley View Tract in the general area which are presently being served by Valley View Drive and its tributary public streets. As to the other remaining land of the Mendonca Estate, which lies above Likelike, it would have been entirely "landlocked" from all existing or possible roadways except for the fact that prior to condemnation the Mendonca Estate, with the Territory's assistance, secured easements from owners of adjacent lands for access over these adjacent lands to a permitted access point, where the upper terminus of Valley View Drive corresponded with the upper boundary of Likelike.

Two real estate appraisers, Messrs. Lockhart and Mendonca, testified for the Territory as expert witnesses. The Mendonca Estate did not put on any expert witnesses

but rely, in support of their contention, on facts elicited from the Territory's expert witnesses on cross-examination. Both expert witnesses appraised the Mendonca Estate property as of the time immediately preceding condemnation and then appraised the remaining property as of the time immediately after condemnation.[5] Under the appraisals made by both witnesses the after values exceeded the before values. No one questions the existence or the extent of the benefit inuring to the Mendonca Estate from the construction of Likelike Highway.

On cross-examination these witnesses admitted that the lots in the Valley View Tract would be similarly benefited when served by access to Likelike via Valley View Drive; that Valley View Tract lots, like the proposed Mendonca Estate lots, comparably increased in value as a result of Likelike Highway "tapping" Valley View Drive and thus afforded them better transportation facilities to Honolulu. It was also brought out that residential lots adjoining a limited access highway to which they had no direct access enjoyed no benefit and according to one of the witnesses such location of the lots in close proximity with the highway, in fact, created a nuisance condition.

Turning now to the consideration of the nature of special benefits and considering the general law on the subject, since this court has not had the occasion hereto-

---

[5]In arriving at their values, both appraisers laid out mythical subdivisions and from a computed total sales figure of the subdivided lots deducted the costs of subdivision and all expenses, including a subdivider's profit. No objection was made to this appraisal method which might be questionable under the rule in *Hawaii Housing Authority* v. *Rodrigues*, 43 Haw. 195. There was also evidence adduced by both appraisers relative to the assumed "bridge access" utilized to determine the "before" values, not only as to costs but as to the acquisition of land between the stream and Kalihi Valley Road not owned by the Mendonca Estate. This, likewise, might have been questioned as speculative.

fore to interpret the meaning of "specifically benefited"[6] as used in the eminent domain statute, we are immediately confronted with this observation made by one of the leading authorities in the field:

> "* * * Upon this subject there is a great diversity of opinion and more rules, different from and inconsistent with each other, have been laid down than upon any other point in the law of eminent domain." 3 Nichols, *Eminent Domain,* 3rd Ed., § 8.62, p. 39.

This observation was made by the author after an exhaustive research of the case law and he concludes:

> "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object

---

[6]In the street assessment case of *Widening of Alakea Street,* 8 Haw. 122, this court passed on the construction of the term "especially benefited," under an act of the legislative assembly at its session in 1870 providing that "whenever a Commission shall be appointed * * *, to assess the value of private property, required for public use, in the laying out of a new road or highway, the Commission shall determine what estates are *especially benefitted* [sic] by such road or highway, and the amount of *especial benefit* accruing to each" (emphasis added), holding that only estates abutting on the proposed street were so benefited. In this connection the court had this to say:

"The point for decision in this matter as it was presented on appeal is solely whether estates or lots not abutting on the street which has been widened shall be assessed for the betterment.

"The authorities are agreed that such terms as 'especially benefited' must be construed to mean something different from the general benefit to the city at large, and from the locality near the street which has been improved by widening.

"Chief Justice Gray, in *Upham* vs. *Worcester,* 113 Mass., 97, says: 'The benefits which may accrue to any estate from the laying out of a highway are of three kinds: 1st. Those directly occasioned to an estate bounding upon the highway, and peculiar to the estate itself as distinguished from other estates not bounding thereon. 2nd. Those shared by the estate in common with other estates in the neighborhood. 3rd. Those which extend to all estates in the same town or city. Benefits of the first kind only can be allowed by way of set-off against the damages awarded to the owner under the Highway Act for taking part of the state and injuring it.'"

The determination of special benefits in assessment cases, however, is governed by considerations which differ from those present in eminent domain proceedings. *Cf., Schnack* v. *City & County,* 41 Haw. 219; 42 Haw. 76.

which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement." 3 Nichols, *Eminent Domain*, 3rd Ed., § 8.6203, p. 45.

This definition of and distinction between general and special benefits, while fundamentally sound, is too general to admit of ready application to specific situations. The difficulty arises not so much from recognition of the basic principles categorizing special and general benefits as in the application of the same to particular factual situations. The application of the distinction between general and special benefits is influenced by the nature of the eminent domain proceedings and the manner in which special benefits are to be utilized.

The determination of what shall constitute a special benefit, to be used as an offset to the value of the property taken under the limitation that only special benefits shall be so used, is governed by the equitable principle which serves to justify the limitation, namely, that it is unfair for a land owner to be taxed specially through the reduction or refusal of compensation by offsetting benefits which his neighbors, whose lands are not taken, nonetheless receive free of charge. It is to avoid the unfairness of making one man pay in land for that which another receives free that special benefits are narrowly conceived.

"Viewed as a matter of justice, it seems much fairer to exclude the general benefits. They are very difficult to assess accurately, and, as they usually arise from an increase in population or business prosperity expected to follow the improvement, they will never be received if the results hoped for do not follow. Moreover, the owner whose land is taken is placed in a worse position than his neighbor whose estate lies outside the path of the improvement and who shares in the increased values without any pecuniary loss.

The owner may also well argue that the general taxes which he pays are justified only by the general benefit that he receives from the undertakings and improvements made under public authority." 3 Nichols, *Eminent Domain*, 3rd Ed., § 8.6205, p. 58.

"It can more easily be determined as to what are special benefits and general benefits if we inquire: What are the reasons for the rule that general benefits may not be deducted and special benefits may be deducted from consequential damages?

"Why are general benefits not deducted? 'General benefits * * * may never be realized, and, if they are, it is unjust that one person should be obliged to pay for them by a contribution of property while his neighbor whose property is not taken enjoys the same advantages without price.' 2 Lewis, Eminent Domain, 3d Ed., 1198. See 18 Am. Jur. 944, sec. 299; Chicago K. & N. R. Co. v. Wiebe, 25 Neb. 542, 41 N.W. 297; 3 Sedgwick, Damages, 9th Ed., 2299." *Prudential Ins. Co.* v. *Central Nebraska Pub. P. & I. Dist.*, 139 Neb. 114, 296 N.W. 752.

The rationale supporting the special benefit rule led early in highway cases to a well-recognized distinction between special and general benefits received by property abutting upon an improved way. The benefits were thus segregated: first, the special and direct benefit arising from its own position upon the way itself; and, second, the general benefit, not arising from location on the way, but from the facilities and advantages occasioned by the way. *Hilbourne* v. *Suffolk*, 120 Mass. 393, 21 Am. Rep. 522; see Annotation, 145 A.L.R. 7, 101.

The foregoing case laid down the rule, which is fundamental, that special benefits resulting from the fact that land abuts on a proposed road do not become general benefits merely because other properties which also front

on the road and receive these same benefits have not been required to contribute to the road in property. This is a situation that occurs most frequently in street widening and realignment cases where not all the properties abutting the widened or realigned highway have been required to contribute a portion of their lands for its construction. It is significant that the legislature has seen fit in such situations to further limit the use of special benefits only for the purpose of minimizing damages to the remaining lands and thus insuring the owner payment in cash for the value of the land taken. R.L.H. 1955, § 8-21. This is legislative recognition of the equitable principle that it is unfair to make one person pay in land for that which another receives free.

All of the highway condemnation cases that have come to our attention follow this definition of a special benefit as being "the special and direct benefit arising from its own position upon the way itself" as distinguished from those benefits "not arising from location on the way, but from the facilities and advantages occasioned by the way" which affects all estates in the neighborhood equally, if not in language at least upon the facts presented in each case.

Typical is *Wilson* v. *Greenville County,* 110 S.C. 321, 96 S.E. 301, 303, where the court said:

"The enhancement in value of lands through which an improved highway is located is a benefit to the owner. The proposition is so well recognized that, in some circumstances, it is made the ground of assessing the owner to pay for it, at least in part. The benefits derived from such improvements are classed as general and special. The general are such as are enjoyed by all people in the community. The special are such as are peculiar to one or more persons by reason of the more favorable location of their lands with reference

to the highway. Those who own lands immediately on a highway derive advantages which are not shared by others in the same community. These special benefits usually find concrete expression in a comparatively greater increase in the value of such lands, though that may not be, and often is not, the only special benefit which they enjoy. But certainly, to the extent that the benefits accruing to those who own lands on the highway exceed those of their neighbors whose lands are off the highway, they are special. A benefit that is limited in enjoyment to one or more persons is special to him or them. Therefore the fact that all persons who own lands adjacent to the road enjoy special benefits does not make such benefits general. A special benefit to one tract on the highway does not become general, because a like benefit is enjoyed by many tracts that are also contiguous to the highway. The benefit accruing to each tract is special to it."

The case of *State* v. *McCann,* (Mo.), 248 S.W. 2d 17, involved a public highway which crossed defendant's farm. It was conceded that all of the property in the general area was greatly benefited by this new highway development. The government attempted to prove that defendant was specially benefited because he could create houselots on either side of the new road. However, the upper court held that the enhancement of the value of his tract was not in a manner peculiar to it, but was common to and enjoyed by other tracts throughout the neighborhood, no part of whose lands were taken. The court succinctly set forth the principles involved:

"We think the law is well settled that 'special benefits' are such as are peculiar to a particular tract of land, enhances the value of such property in a manner peculiar to it, and not common to and enjoyed by

other tracts in the same neighborhood, no part of which is taken.

      *      *      *      *      *      *

"A 'general benefit', as applied to a person whose property is being condemned for a highway, is one common (though it may be in a greater or lesser degree) to all other landowners in the vicinity of such road, including those whose land is not taken as well as those whose land is partly taken. A landowner from whom some land is taken is chargeable with the value of special benefits but not the value of general benefits. To charge a tract of land with the value of general benefits is to require its owner to pay for a benefit common to others who are themselves exempt from such payments. [Citing Missouri cases.]

"But it is also the law that a benefit accruing to all lands similarly situated and bordering on a highway may, nevertheless, be special as to each of them, provided, they are not also benefits accruing to lands in the community which do not border on the highway and, consequently, no part of which is taken."

The court in *State ex rel. State Highway Commission* v. *Williams,* Mo. App., 69 S.W.2d 970, 972, was terse and to the point in its direction to the trial judge that "* * * an instruction should be so framed in these cases as to make clear to the jury that a special benefit to land adjoining a highway, though shared by other lands similarly situated, remains a special benefit for which the condemnor is entitled to credit if such special benefit is not shared generally by other lands in the community affected by the highway and not so situated."

The Territory, while unable to cite to this court any case holding contrary to the rule that benefits which inure to both abutting and non-abutting properties are general and not special, contends that this rule is applicable only to conventional type highways where every party

fronting it is entitled to free and open access to the highway and has no application to a limited access type highway such as Likelike Highway. The only case dealing with a limited access highway situation that has come to our attention is *State* v. *Bailey*, 212 Ore. 261, 319 P.2d 906, where the court refutes the contention of the Territory in the following language:

"Evidence of general benefits may not be considered. Benefits which are common to the public or which the land of defendant shares in common with lands of others in the community which do not abut upon the highway may not be considered.

\*       \*       \*       \*       \*       \*

"They may consider evidence of improved outlet to market to said premises, of higher and better use, as for subdivision, residential or commercial purposes, frontage on a better road, modes of access, and in general any substantial evidence that the improvement will add to the convenience, accessibility, use and value of the land if such benefit is not shared by nonabutting lands. The fact that other lands abutting on the improvement are also specially benefited is immaterial."

The Territory insists that the words "if such benefit is not shared by nonabutting lands," used by the court in the *Bailey* case, were inadvertently included therein and are inconsistent with the other language used. It takes comfort in the fact that the court refused to rule as a matter of law that no special benefits could be shown and returned the case for a new trial to permit the jury to consider factors of access as possibly constituting special benefits. However, in that case the condemnor had provided several points of access from the proposed highway directly to the condemnee's remaining land. These points of access were peculiar to the remaining land and

served only this land, and under these circumstances evidence might well be adduced to indicate a special benefit. In our case, however, no access is provided from Likelike directly to the remaining lands of the Mendonca Estate; on the other hand, such access is expressly prohibited. The access afforded is not to the remaining lands of the Mendonca Estate but rather to Valley View Drive which serves not only the Mendonca Estate lands but also through its tributary streets the entire Valley View Tract. In other words, the access here provided is shared in common by the lands of the Mendonca Estate and the various lots in the Valley View Tract. It is in no way peculiar to the Mendonca Estate Tract.

Although the expert witnesses differed in their estimate of the proportionate monetary appreciation in value of the Valley View Tract lots and the remaining Mendonca Estate property as a result of the access afforded through Valley View Drive into Likelike Highway,[7] they were in agreement on the proposition that this access afforded to the Valley View Tract lots to Likelike Highway was equal to that afforded to the projected Mendonca Estate lots. Under these circumstances, and since the benefit of access is shared equally by the remaining land of the Mendonca Estate adjoining Likelike Highway with lots of the Valley View Tract not abutting on the highway, we can only conclude under the applicable law above set forth that this benefit of access was general rather than special. As such, its cost is properly allowable generally to all taxpayers to avoid the inequity of requiring the Mendonca Estate to pay in land for a benefit received without cost by all the owners of lots in the Valley View Tract.

---

[7]Mr. Mendonca attributed his disproportionate monetary appreciation in value to the fact that the streets in Valley View Tract were without curbs, gutters and sidewalks and that the tract was not a modern subdivision inasmuch as many of the buildings located therein were unattractive and substandard while the proposed Mendonca Estate subdivision would have all these modern conveniences.

True, such access now permits the Mendonca Estate to subdivide its remaining lands in accordance with their highest and best use without the necessity of itself providing sufficient access to satisfy the requirements of the City Planning Commission. This undoubtedly is a valuable benefit and could very well be considered a special benefit were it ascertainable as such under the evidence. In this record, its existence and extent is indistinguishable from the general benefit reflected in increased market value flowing from the access provided to Likelike Highway through Valley View Drive accruing to the lands served thereby. The burden of establishing special benefits rests upon the condemning authority. 5 Nichols, *Eminent Domain,* 3rd Ed., § 18.5, pp. 198, 201; 29 C.J.S., *Eminent Domain,* § 184, p. 1067; 18 Am. Jur., *Eminent Domain,* § 342, p. 985.

It was the view of the court below, as the Territory now contends, that the rule of the *Hilbourne* case, as confirmed in the *Bailey* case, is a technical one and should not be employed in this particular situation. Rather than technical, it is the only logical approach, as only property which lies in the path of a proposed highway is subject to condemnation. Remnants from such land alone are subject to consideration of special benefits. Naturally they abut on the proposed highway and it is only logical that, in determining whether the benefit is peculiar to such lands because of the construction of the proposed highway, comparison should be made with properties similarly situated, as contrasted with those not similarly located.

The trial court held, as the Territory now contends, that if this rule is to be applied in this jurisdiction the Valley View Tract should be considered as a unit, and as such, it would be comparably situated with the remaining Mendonca Estate property along the highway, thus

rendering the access benefit a special one to the Mendonca Estate. In the absence of any reasonable relationship and pertinency to the issues, courts cannot indulge in such assumption as the condemning authority must accept the physical facts as they existed on the date of condemnation for purposes of determining just compensation. There is no valid reason for so considering the Valley View Tract. On the contrary, on the date of condemnation it was physically subdivided and comprised five full blocks divided into residential lots, almost entirely separately owned, on half of which were built houses occupied as homes, which were served by five public streets. Further, several Valley View Tract lots lying in the course of Likelike Highway were also condemned and were not there considered as part of a larger, integrated unit of land, but as separate tracts of land enjoying separate ownership. Under these circumstances there would be no justification for considering the Valley View Tract as a unit for the purpose of comparison with the Mendonca Estate property in the determination of the nature of the access benefit. The physical facts of ownership and individual use existing on the date of condemnation are usually controlling in determining just compensation, including the existence of special benefits. R.L.H. 1955, § 8-22; 3 Nichols, *Eminent Domain,* 4th Ed., § 8.5, p. 17; 4 Nichols, *Eminent Domain,* 4th Ed., § 12.23, p. 72; *Cf., City of Los Angeles* v. *Geiger,* 94 Cal. App. 2d 180, 210 P.2d 717.

Reversed and remanded for entry of judgment for defendants in the sum of $28,435, being the stipulated value of the land taken, together with interest thereon at the rate of five per cent. per annum from the date of possession on July 20, 1955.

*Walter D. Ackerman, Jr.* for Defendants-Appellants.

*Shiro Kashiwa,* Attorney General, and *Daniel D. S. Moon,* Deputy Attorney General, (*Lawrence H. Kam* with them on the brief) for Plaintiff-Appellee.