**2015 UT App 211**

## THE UTAH COURT OF APPEALS

UTAH DEPARTMENT OF TRANSPORTATION,
Plaintiff and Appellee,
*v.*
TBT PROPERTY MANAGEMENT, INC.,
Defendant and Appellant.

Memorandum Decision
No. 20130211-CA
Filed August 20, 2015

Fourth District Court, Provo Department
The Honorable Steven L. Hansen
No. 090404464

Brant H. Wall and Gregory B. Wall, Attorneys
for Appellant

Sean D. Reyes, Brent A. Burnett, and Randy S.
Hunter, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which SENIOR JUDGES RUSSELL W. BENCH AND JUDITH
M. BILLINGS concurred.[1]

CHRISTIANSEN, Judge:

¶1 This case involves a taking of private property by the
Utah Department of Transportation (UDOT) to construct the
Pioneer Crossing Highway, a limited-access public highway. The
landowner, TBT Property Management, Inc. (TBT) appeals the
trial court's pretrial rulings regarding whether UDOT had
mitigated severance damages from the condemnation by

---

1. The Honorable Russell W. Bench and Judith M. Billings,
Senior Judges, sat by special assignment as authorized by law.
*See generally* Utah R. Jud. Admin. 11-201(6).

providing access to an otherwise isolated portion of TBT's remainder property and whether UDOT could amend its complaint to reflect that mitigation. TBT claims that these errors rendered the jury's verdict unsupported by the evidence. TBT also challenges the trial court's rulings limiting TBT's cross-examination of UDOT's appraisal expert at trial and allowing the jury to view the subject property. We affirm.

¶2    In 2009, UDOT instituted this eminent domain action to acquire a portion of TBT's property located in Lehi, Utah, in order to build the Pioneer Crossing Highway. UDOT's condemnation resolution identified the property to be taken as approximately ten acres of TBT's real property and all access rights to or from the condemned property or Pioneer Crossing Highway appurtenant to TBT's remainder property. UDOT also sought immediate occupancy of the property. The parties agreed to an effective taking date of March 30, 2009.

¶3    In its answer, TBT sought severance damages, claiming that the condemnation would diminish the market value of TBT's remainder property by limiting public road access to and from the property. TBT's property previously had access to 8020 North Street along its southern boundary and access to Millpond Road along its western boundary. After the condemnation, TBT's remainder property would be left with no access along the southern boundary and restricted access to Millpond Road.

¶4    In May 2011, before the trial to determine just compensation for the taking and severance damages, UDOT sought permission from the court to amend its complaint to reflect a modified condemnation resolution. The modified condemnation resolution identified the same real property to be taken but reduced the access rights taken in the condemnation by "[e]xcepting and reserving to [TBT], their successors or assigns, the right of access to the nearest roadway of [Pioneer Crossing Highway] over and across the Pioneer Crossing right of way line for a 66-foot section." UDOT thus claimed to have mitigated the access restrictions to TBT's remainder property created by the original condemnation resolution and thereby to

have reduced the severance damages associated with the condemnation. TBT objected to UDOT's motion to amend, arguing that the proposed amended complaint did not materially reduce the amount of property taken and failed to demonstrate any mitigation of TBT's damages.

¶5     After a hearing on the motion, the trial court granted UDOT's request to amend its complaint. The trial court determined (1) that TBT would not suffer prejudice from the amendment because the amount of compensation and severance damages had not yet been determined at trial and (2) that UDOT did not file the motion to amend due to any "'dilatory motive, bad faith, or unreasonable neglect.'"

¶6     Thereafter, TBT filed a motion in limine requesting that the court rule as a matter of law that UDOT had not established viable access to TBT's remainder property by creating an actual highway or roadway. TBT argued that the reservation of a "right of access to the nearest roadway" in the modified condemnation resolution did not convey an actual interest in land or provide present access to TBT's remainder property. Specifically, TBT argued that because UDOT had neither entered into any agreements with the cities of American Fork or Lehi nor made any official plans to build a road that connected TBT's remainder property to a public road, the mere provision of a break in the limited-access line did not provide legally sufficient access to TBT's remainder property to support a basis for mitigation of damages. UDOT opposed TBT's motion, arguing that UDOT provided access by opening up the limited-access line for TBT's use, thereby mitigating the impact on the value of the remainder property. The trial court denied TBT's motion, ruling that "the right of access in the amended complaint has been established by sufficient evidence now to submit the question to the jury to decide whether or not UDOT has, indeed, mitigated damages by providing access."

¶7     The case proceeded to trial to determine the compensation due to TBT for UDOT's condemnation of the property, the compensation due to TBT for UDOT's use of

temporary easements over TBT's property, and severance damages to TBT's remainder property. UDOT's appraisal expert testified that, as of the agreed-upon valuation date of March 30, 2009, severance damages to the remainder property were $51,411. TBT called two appraisal experts, both of whom testified to severance damages in excess of $2,000,000 in light of UDOT's amendment of the condemnation resolution.

¶8 At trial, counsel for TBT attempted to cross-examine UDOT's appraisal expert, J. Phillip Cook, about an appraisal he prepared for UDOT in 2008, prior to the filing of the eminent domain action. UDOT objected, contending that the appraisal had been prepared for valuation and occupancy purposes and that the result of that appraisal was therefore not admissible evidence pursuant to Utah Code section 78B-6-510(3). In response, counsel for TBT argued that he was not asking Cook to testify to the property value resulting from that appraisal but rather to testify about how Cook determined the fair market value of the property in 2008. UDOT then stipulated that Cook could testify as to the amount of severance damages he assessed in both of his appraisals, but not to the fair market value he determined for the property in 2008. UDOT also stipulated that Cook could testify as to whether his assessment of fair market value of the property in 2008 was higher or lower than his assessment of that property's value in 2009. Cook testified that his 2009 appraisal valued the property taken at a higher value. Cook also testified that in his 2008 appraisal he had calculated severance damages to be $1,490,203 and that in 2009, after the amendment to the condemnation resolution to provide access to TBT's remainder property, he had calculated severance damages to be $51,411.

¶9 During trial, UDOT proposed that the jury visit the subject premises. TBT objected to this jury view, asserting that a road UDOT had constructed to provide access to an adjacent landowner "would imply an unwarranted and false inference of a valid access" to TBT's remainder property. TBT also argued that a jury view would be prejudicial because TBT's property had not been maintained and heavy equipment was being stored

on the property. The trial court allowed the jury to visit the property over TBT's objection.

¶10    At the close of trial, the jury returned a verdict against UDOT and awarded TBT $1,877,194 as the fair market value of the taking, $14,983 for the value of two temporary construction easements associated with the property, and $1,044,091 for the severance damages to the remainder property. TBT appeals.

I. Issues Relating to Access

¶11    First, TBT raises three issues on appeal that, while framed as distinct challenges to the trial court's rulings, all arise from the same legal issue—validity of access to the remainder property. Specifically, TBT's challenges—to the trial court's grant of UDOT's motion to amend its complaint to include mitigation of damages, to the trial court's denial of TBT's motion in limine, and to the jury's verdict—all stem from TBT's claim that the break in the Pioneer Crossing limited-access line reserved to TBT in the amended condemnation resolution did not constitute "access" to TBT's remainder property for purposes of mitigation. We review the trial court's decisions on UDOT's motion to amend and TBT's motion in limine for an abuse of discretion. *Daines v. Vincent*, 2008 UT 51, ¶ 21, 190 P.3d 1269; *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1281 (Utah 1998). But we review for correctness the trial court's underlying legal conclusions, including its interpretation of the relevant statutes. *Aagard v. Jorgensen* (*In re Anna Blackham Aagard Trust*), 2014 UT App 269, ¶ 11, 339 P.3d 937. Because we conclude that TBT has failed to demonstrate that the break in the limited-access line does not constitute access for purposes of mitigation, TBT's challenges to the trial court's rulings on these related issues fail.

¶12    In an eminent domain action, Utah law establishes a right to just compensation for property "actually taken" and for property "not actually taken, but injuriously affected." Utah Code Ann. § 78B-6-512(1) (LexisNexis 2008). While the amount owed to a landowner under this section is assessed as of the date

of the service of summons, the condemner may attempt to mitigate or reduce damages by limiting the impact on the landowner's property:

> The court or the jury shall consider mitigation or reduction of damages in its assessment of compensation and damages if, after the date of the service of summons, the plaintiff:
> (a) mitigates the damages to the property; or
> (b) reduces the amount of property actually taken.

*Id.* Thus, "[t]he statute, in allowing the condemner to mitigate or reduce its damages, aids in the determination of the constitutional right to just compensation." *Utah Dep't of Transp. v. Ivers*, 2009 UT 56, ¶ 26, 218 P.3d 583 (citing Utah Const. art. I, § 22).

¶13 TBT first objected to UDOT's motion to amend its complaint, arguing that modification of the condemnation resolution did not modify the property taken and was legally insufficient to constitute a basis for mitigation of damages. Thereafter, TBT moved the trial court for a ruling that the break in the limited-access line did not constitute "access" to its property as a matter of law. The trial court rejected both of TBT's challenges, ruling that "the right of access in the amended complaint has been established by sufficient evidence now to submit the question to the jury to decide whether or not UDOT has, indeed, mitigated damages by providing access." The trial court thus rejected TBT's argument that the break in the limited-access line did not constitute access as a legal matter and reserved for the jury the factual question of what effect UDOT's mitigation efforts would have on the severance damages.[2]

---

2. TBT argues at length that the trial court was obligated to determine, as a matter of law, whether mitigation had occurred. TBT claims that the court erroneously left to the jury the question of "whether or not mitigation had occurred, as opposed

(continued…)

¶14   TBT argues that the trial court's rulings are erroneous and that TBT's motion in limine should have been granted because, "[a]s a matter of law, the mere designation of a right-of-access to the nearest roadway of said highway across a 66-foot section of the right of way line should not have gone to the jury." TBT cites no legal authority to support the proposition that a right of access of the sort at issue here cannot provide a basis for mitigation of damages. Instead, TBT asserts, again without any supporting legal authority, that the "evidence is overwhelming that no legal access to the Pioneer Crossing roadway from the TBT property presently exists." TBT has not set forth any legal standard by which we may analyze its claim that the break in the limited-access line does not constitute "legal access." Neither has TBT demonstrated that "legal access" or "viable access" is the appropriate legal standard by which to evaluate UDOT's mitigation efforts. These arguments, asserted without the support of legal reasoning or authority, are inadequate to carry TBT's burden of demonstrating error in the trial court's rulings. *See Angel Investors, LLC v. Garrity*, 2009 UT 40, ¶¶ 35–36, 216 P.3d 944. While we understand that TBT believes more was required of UDOT to provide a basis for mitigation of damages, that belief alone, without the application of specific legal principles, is insufficient to persuade us that the trial court erred in allowing

---

(…continued)

to the value of any mitigation." We disagree. In denying TBT's motion in limine, the trial court implicitly and necessarily ruled that the break in the limited-access line provided a legally sufficient basis for the jury to determine the value of UDOT's mitigation efforts. The trial court explained that "the right of access in the amended complaint has been established by sufficient evidence now to submit the question to the jury." Given the context of the trial court's ruling, we read this statement as a legal determination that UDOT had made a sufficient showing that mitigation had occurred to send to the jury the question of the value of that mitigation in relation to the severance damages.

the jury to consider UDOT's mitigation efforts in calculating TBT's severance damages.[3] As a consequence, TBT's claims that the trial court erred in allowing UDOT to amend its complaint and in denying TBT's motion in limine fail. Because TBT's argument that the jury's verdict was "not within the range of credible evidence" is based on its assertion that the jury should not have considered mitigation, that claim also fails.

## II. Cross-examination of UDOT's Appraisal Expert

¶15    TBT also argues that the trial court erred in limiting TBT's cross-examination of UDOT's appraisal expert, J. Phillip Cook. The trial court ruled that Utah Code section 78B-6-510 barred admission of testimony regarding the value of the property reached in an appraisal performed to obtain immediate occupancy under that section. Thus, the trial court sustained UDOT's objection to TBT's attempt to elicit the value of the property Cook had assessed in his 2008 appraisal. We review the trial court's interpretation and application of a statute or a rule of evidence for correctness. *Utah Dep't of Transp. v. 6200 S. Assocs.*, 872 P.2d 462, 465 (Utah Ct. App. 1994). "'While unduly harsh limitation of a key expert witness can amount to prejudicial error, the proper scope of cross-examination is within the sound discretion of the trial court and should not be disturbed absent a showing of abuse.'" *Lawrence v. Mountain Star*

---

3. TBT does cite a number of authorities discussing the offsetting of severance damages by provision of a "special benefit" to the landowner's remainder land. *See, e.g.*, *Hempstead v. Salt Lake City*, 90 P. 397 (Utah 1907); *Territory of Hawaii v. Mendonca*, 375 P.2d 6 (Haw. 1962). However, those cases deal with situations where the condemner seeks to receive an offset against severance damages caused by the taking by providing a benefit specific to the remainder land. *See* Utah Code Ann. § 78B-6-511(4) (LexisNexis 2008); *Mendonca*, 375 P.2d at 8–9; *Hempstead*, 90 P. at 400–01. Here, UDOT did not seek an offset to reduce payment for damage done to the remainder property. Thus, the law regarding offsets of special benefits has no application here.

*Healthcare*, 2014 UT App 40, ¶ 17, 320 P.3d 1037 (quoting *Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 923–24 (Utah 1990)).

¶16    If a condemning authority seeks immediate occupancy of the condemned property, the condemner must "file with the clerk of the court a sum equal to the condemning authority's appraised valuation of the property sought to be condemned." Utah Code Ann. § 78B-6-510(3)(a) (LexisNexis 2008). "That amount shall be for the purposes of the motion only and is not admissible in evidence on final hearing." *Id.* § 78B-6-510(3)(b). Cook testified at trial regarding the fair market value of the taken property and severance damages for the injury to TBT's remainder property. Cook performed two appraisals of TBT's property: one in 2008 and a second in 2009. The 2008 appraisal was completed for purposes of UDOT's motion for immediate occupancy of the condemned property, and the 2009 appraisal was completed for purposes of this litigation. During cross-examination at trial, counsel for TBT asked Cook about the 2008 appraisal and his fair market valuation of the property at that time:

> Q: Mr. Cook, we were discussing your original report that you furnished or the State furnished a copy, and I notice in the report you eventually arrived at a conclusion of the fair market value of the property as of the date of that appraisal, and if I read it correctly, you came up with a value in the before condition of $5,938,035. Does that sound correct?

Counsel for UDOT promptly objected to this line of questioning, arguing that Utah Code section 78B-6-510 barred the admission of the amount of the appraised valuation of the property at trial. The trial court agreed with UDOT and ruled that Cook could not testify as to the fair market value contained in the 2008 appraisal. The trial court also granted UDOT's motion to strike TBT's question and Cook's response from the record and admonished the jury to disregard that portion of the testimony.

¶17    Aside from the limitation on TBT's ability to inquire as to the amount of the 2008 appraisal, TBT has identified no other restrictions the trial court placed on its cross-examination of Cook. On appeal, TBT does not attempt to demonstrate that the trial court's interpretation or application of section 78B-6-510 is erroneous by, for example, showing that the 2008 appraisal was not prepared in support of a motion for immediate occupancy or was not prepared for UDOT.[4] Rather, TBT argues that its questioning would have fallen outside of section 78B-6-510's bar because TBT did not seek to elicit the amount UDOT tendered to obtain occupancy of the property but rather sought only to question Cook about how he arrived at the fair market value of the property in the 2008 appraisal. TBT argues that the question posed to Cook was a legitimate attempt to impeach Cook on his subsequent valuation and that it was therefore error for the trial court to restrict its cross-examination on this point. However, even if TBT did not seek to elicit testimony prohibited by section 78B-6-510 by asking Cook to confirm the amount of the 2008 valuation, TBT's question placed before the jury the precise information that section 78B-6-510 bars from evidence. The trial court therefore did not abuse its discretion in striking the testimony and ruling that TBT could not inquire as to the specific valuation reached by Cook in his 2008 appraisal. *See Lawrence*, 2014 UT App 40, ¶ 17.

### III.  Jury View

¶18    Next, TBT asserts that it was error to permit the jury to view the subject property. The trial court allowed the jury to see the property "not for the purpose of receiving independent evidence but, rather, to better understand and more fully appreciate the evidence produced in open court." The trial court may order a jury view when "in the opinion of the court it is proper for the jury to have a view of the property which is the subject of litigation." Utah R. Civ. P. 47(k). The trial judge is

---

4. TBT raised such arguments below but has not pursued them on appeal.

invested with a "reasonable latitude of discretion" in determining whether a jury view is appropriate. *Utah State Road Comm'n v. Marriott*, 444 P.2d 57, 58 (Utah 1968). "When reviewing a district court's exercise of discretion, we will reverse only if there is no reasonable basis for the district court's decision." *Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 9, 329 P.3d 815.

¶19    TBT does not object to how the jury view was conducted or claim that jurors were exposed to information not in evidence during the view. Instead, TBT states that, given the dispute over whether UDOT mitigated the damages to the remainder property by providing an access, it "fail[s] to see how a view by the jury could achieve any purpose other than to invite a false and prejudicial element of implied validity of access."

¶20    But TBT's claim that the jury view served no purpose other than to prejudice the jury against TBT fails to address the reasoning given by the trial judge in ordering the jury view. After considering the parties' arguments, the trial court ruled that a jury view was appropriate:

> I'm starting to think, "I think I better let them see everything," because this is a complicated case. The diagrams just don't give you an over—enough picture of the property.
>     The photographs are limited in what they're looking at . . . . I'm going to allow this view, because I didn't get it till I went out there, honestly. I was looking at diagrams and charts . . . . It's a complicated case, and it can't really be fully explained, the whole surrounding, by looking at the maps . . . . We're not looking at one piece of ground. We're looking at a lot of pieces and a lot of circumstances . . . .

¶21    In light of this explanation by the trial court, we are not convinced that the court's decision to permit a jury view was unreasonable. Indeed, the reason given by the trial court for the

viewing—to facilitate the jury's understanding of "the whole surrounding" in a complicated case—mirrors the reasoning of our supreme court in approving a jury view in *Utah State Road Commission v. Marriott*, 444 P.2d 57 (Utah 1968). There, the supreme court observed that "the purpose of the jury's inspection was not only to see the property itself, but [to] see the total picture of how it was situated with respect to its surroundings." *Id.* at 58. Thus, the *Marriott* court reasoned, there was "nothing unreasonable or unjust in the court permitting [the jury] to see this property they were to evaluate." *Id.* We reach the same conclusion here. The trial court's decision to allow the jury to view the property to gain a better understanding of the "property they were to evaluate"—an understanding that the court believed could not be adequately conveyed by diagrams and charts—is not unreasonable, and therefore TBT has not demonstrated that the trial court abused its discretion in ordering the jury view.

## IV. Attorney Fees

¶22     Finally, TBT claims that it is entitled to attorney fees and costs because UDOT acted in bad faith by filing its amended complaint seeking to mitigate the damage to TBT's property by creating a break in the limited-access line. In ruling on UDOT's motion to amend below, the trial court specifically found that "UDOT did not file its Motion to Amend Complaint 'as the result of a dilatory motive, bad faith, or unreasonable neglect on the part of the movant.' The fact that an access road was added to the plans years after the Agreement was signed does not, by itself, demonstrate 'dilatory motive, bad faith, or unreasonable neglect.'"

¶23     The trial court's determination that UDOT did not act in bad faith is a factual finding to which we defer unless that finding is clearly erroneous. *See Gallegos v. Lloyd*, 2008 UT App 40, ¶ 15, 178 P.3d 922. Our role is not to reweigh the evidence, but to determine only if the appellant has demonstrated a lack of evidentiary support for the trial court's findings. *Barrani v. Barrani*, 2014 UT App 204, ¶ 24, 334 P.3d 994. TBT has made no

effort to demonstrate that the trial court's finding is unsupported by the evidence. Instead, TBT merely asserts that "[a]ll such elements [of bad faith] exist in this case" and asks us to render our own decision that UDOT acted in bad faith, "[c]ontrary to the trial court's ruling." We will not do so. TBT has not demonstrated that the trial court's finding that UDOT did not act in bad faith is clearly erroneous. Accordingly, we decline to award TBT fees and costs for this appeal or for the trial below.

¶24    Affirmed.

_____