HENRY · WATERHOUSE TRUST COMPANY, LIM-
ITED, *v.* HENRY FREITAS.

No. 2132.

ARGUED AUGUST 9, 1934.     DECIDED SEPTEMBER 19, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY COKE, C. J.

In November, 1925, R. W. Shingle, a resident of Hono-
lulu, was the owner of a certain tract of land consisting
of four contiguous lots and containing a total area of about
3.92 acres, situated in the Makiki district, Honolulu. At
that time Mr. Shingle, being about to depart from the Ter-
ritory and desiring to sell the property, for the purpose of

expediting a sale if an acceptable offer were made during his absence, conveyed the legal title to the complainant-appellee above named, Henry Waterhouse Trust Company, Limited. After his return to Honolulu he and the respondent-appellant, Freitas, entered into a written agreement, dated May 1, 1926, under the terms of which the former agreed to sell and the latter agreed to purchase the property for the sum of $60,000, $20,000 of which was paid in cash and the balance, to-wit, $40,000, was to be paid on or before two years, with interest payable quarterly. Freitas also agreed to "pay all taxes, assessments, sewer rates, water rates and all other charges which hereafter may be legally imposed upon the said premises or any part thereof or any improvements thereon, whether imposed, assessed or chargeable against the party of the first part or the party of the second part." Upon the date of the execution of this agreement a second document was signed by the parties which provided that should Freitas upon a resale of the property realize a sum in excess of $60,000 over and above expenses, taxes, assessments, etc., then Shingle should participate equally with Freitas in such excess. This latter document was by reference incorporated into the agreement of sale.

It appears that the property was purchased by Freitas as a business venture, his plan being to subdivide the land into suitable residential lots and to place the lots on the market, and for that purpose he caused a subdivision of the property to be made, the plan being filed in the office of the registrar of conveyances as File Plan No. 255. By a written document, likewise dated May 1, 1926, Freitas granted to the complainant the exclusive right to sell the property. The land thus subdivided was placed on the market through the agency of complainant, in accordance with the agreement, and during the following five-year period seven lots were disposed of at prices approved by

the respondent. In some instances the trust company, in order to assist the purchasers, partially financed the sales and received back from the purchasers mortgages for unpaid balances.

It appears that at the date of the agreement between Shingle and Freitas the trust company received the $20,000 paid by Freitas and placed this amount, together with an additional $40,000 advanced by it, to the credit of Mrs. Shingle, under Shingle's instructions. The result of these transactions was that Freitas had invested in the property the sum of $20,000, and the trust company had invested the sum of $40,000, on the strength of the Freitas agreement. It further appears that the trust company was at that time entitled to have transferred to it by way of security the Freitas agreement, but through neglect or some oversight this assignment was not actually executed by Shingle until July 29, 1931, at which time Shingle duly assigned the agreement to the trust company. Having obtained the assignment of the agreement the trust company promptly made demand upon Freitas for payment of the amount due, which it asserted amounted at that time to $40,071.28. This sum included the face value of unpaid mortgages given by certain of the purchasers of lots to secure amounts due on purchase prices and also included compound interest on unpaid balances due under the Freitas agreement, computed quarter-annually. The respondent ignored this demand and later on a second demand was made upon him accompanied by the tender of a deed of the unsold portion of the premises. Respondent refused to comply with this demand and finally, in November, 1931, complainant instituted suit in the circuit court of the first judicial circuit to compel specific perfomance of the contract. Issue was joined and the case went to trial. Upon the conclusion of the hearing the circuit judge rendered a decision in favor of the complainant

but required a restatement of the account between the parties. Thereafter a decree was entered, the effect of which was to fix the amount due from respondent to complainant to be the sum of $30,435.51. This reduction was arrived at mainly by requiring the trust company to assume the mortgages given by purchasers and to accord to respondent credit for the full purchase price of the lots sold and disallowing compound interest on the account and holding respondent liable merely for simple interest on unpaid balances due under the contract at the rate of six per cent. The form of deed to be executed and delivered to respondent was attached to and made a part of the decree. It should here be pointed out that the form of deed approved by the circuit judge contained a covenant of warranty by Shingle to the grantee. From the decree thus made respondent has perfected an appeal to this court.

In presenting his appeal counsel for respondent urges a variety of grounds attacking the decree of the lower court, emphasizing the following: (1) That Shingle, prior to entering into the agreement of sale with Freitas dated May 1, 1926, had parted with the title to the property involved; (2) that Freitas was induced to sign the agreement by false and fraudulent representations on the part of Shingle; (3) that no demand was ever made upon Freitas for the correct amount due under the contract; (4) that the deed tendered by complainant to respondent did not contain proper covenants of warranty; (5) that complainant permitted the property to be stripped and wasted, and (6) that the deed tendered to Freitas contained reservations of an easement and water right contrary to the terms of the agreement. We will discuss these questions in the above order.

At the outset it should be stated that the transactions between Shingle and the Henry Waterhouse Trust Com-

pany, in connection with the property involved, were conducted in a loose and unbusinesslike manner, both in reference to the transfer of the legal title by Shingle to the trust company in 1925 and the dealings in connection with the advance of $40,000 by the trust company to his wife under the directions of Shingle. It is clear, however, that the second transaction did not concern Freitas nor in any way affect his rights. On the other hand, where under an agreement of sale and purchase of real property the vendor is without title to the property and cannot perform his undertaking to vest title in the vendee this failure of title will be fatal to a proceeding to enforce the vendee to perform his obligations under the contract. In the present case, however, the record indicates that Shingle in 1925 vested the bare legal title to the property in the trust company, without consideration and for mere convenience of sale, and at the time received from the trust company a letter declaring that it held the legal title in trust for the use and benefit of Shingle. Under these circumstances the equitable title remained in Shingle and he was in a position to require the trust company to reconvey the property to him or to transfer it to such third person or persons as he might nominate. Therefore, on May 1, 1926, the date the agreement with Freitas was entered into, Shingle was in a position to enter into the contract with Freitas for the sale of the property to him upon the terms at that time reduced to writing and executed by the parties.

Another of the several defenses relied upon by the respondent is based upon his claim that at the time of the execution of the agreement Shingle falsely assured Freitas that he had arranged for the sale of a sufficient number of lots within the tract to assure a return of the investment. The evidence on this subject is contained in the testimony of Freitas and Shingle and is both weak and

unconvincing, and, we might add, contradictory. Freitas testified that Shingle said that "he had some of the property practically sold" and again he testified that Shingle said "he had a few of the lots practically sold;" and again, that Shingle said that "those sales, if they went through, would practically take care of the $40,000." Shingle's testimony, while not very clear on the point, may, we think, be summed up as a denial that he had made any such representation to Freitas and he specifically denied that he had assured Freitas that he had already secured five purchasers at sixty cents per square foot. A finding of fraud cannot be predicated on the mere expression of opinion. See *Hetland* v. *Bilstad,* 118 N. W. (Ia.) 422. With this record before it the court below was amply justified in holding that the averments in the answer were not sustained by the proof.

The respondent makes the further point, that no demand was made upon Freitas for the correct amount due under the contract. Respondent does not deny that a demand was made for the performance of his obligation contained in the contract but the burden of his grievance seems to be that the amount demanded was in excess of the actual amount due or the amount finally found to be due by the trial court. The failure of the respondent to tender the legal amount due precludes him from complaining of the excessive demand made upon him by the complainant.

There was attached to the complainant's demand and tendered to respondent a deed of the remaining portion of the premises. This deed contained full covenants of warranty by Shingle to the respondent. Respondent now objects to the form of the deed because the warranty of title runs from Shingle instead of from the Henry Waterhouse Trust Company. This contention is wholly without merit. Under the contract Freitas had a right to a

title supported by the warranty of Shingle and he might well have complained had the warranty clause in the deed come from the trust company rather than from the party which the agreement prescribed it should come from.

Again the respondent complains that the complainant had permitted the property to be damaged through the removal therefrom of volcanic sand. It does appear that a considerable quantity of sand was removed from what is known as the Nozoe lots. There is no evidence that this removal was permitted by the complainant. However, in view of the fact that the Nozoe premises were a portion of the property sold by the trust company under its agency agreement and Freitas was given credit for the full cash value thereof, he was not injured in the slightest by reason of any damage which the premises may have sustained subsequently to the sale to Nozoe.

And finally, it is urged by the respondent that the court below erred in requiring him to accept a deed of the premises from the complainant which contained reservations of a stream easement and the waters of the stream. It is pointed out that the contract itself provides that "the party of the first part agrees to execute and deliver to the party of the second part a warranty deed for said land and improvements with full and usual covenants." It is urged that the provision above quoted permits of no reservations in the deed of the premises from complainant to respondent. As heretofore indicated the premises in question were, prior to subdivision by respondent, composed of four adjoining lots, one of which was purchased by Shingle from George Lycurgus. The other three parcels were acquired by Shingle directly through land grants from the Territory of Hawaii. One of these grants, namely, No. 6814, contained the following reservation: "Excepting and reserving the Makiki stream and all riparian and other rights in or to this stream and the waters there-

of," and a reservation in identical language was inserted in the deed to be executed by the trust company and Shingle and thereafter delivered to the respondent pursuant to the decree of the trial court.

It is obvious that neither Shingle nor the trust company could have conveyed to Freitas the easement or the water rights thus expressly reserved to the territorial government under the terms of grant 6814. The reservation is two-fold in its nature. First, it reserves the stream easement, and secondly, it reserves the waters of the stream. The reservation of the easement in the grant from the Territory to Shingle merely protects the natural flow of the water in the bed of the stream along its normal course without obstruction or diversion. The existence of the stream was testified to by the respondent at the trial and he also indicated his familiarity with the property prior to entering into the agreement of purchase. In fact, he appraised the buildings on the property, at the request of Shingle, long before the date of the agreement. It therefore must be assumed that he knew of the existence of the stream and hence the well-known rule of obvious easement applies in this case. The modern rule is that the parties, in the absence of anything to the contrary, are presumed to have contracted with reference to the existing state and condition of the property and if an easement to which it is subject be open and visible and of a continuous character the purchaser is supposed to have been willing to take the property as it was at the time, subject to such burden. The easement in question was open and visible and was known by the respondent to exist prior to his entering into the contract to purchase the property, and it is to be presumed in the absence of any showing to the contrary that the existence of this encumbrance was considered in fixing the price at which Freitas agreed to purchase the premises from Shingle.

"If the purchaser at the time of entering into the contract was aware of the defect in the vendor's interest or title, or deficiency in the subject-matter, he is not, on suing for specific performance, entitled to any compensation or abatement of price." 36 Cyc. 742. See *Wetherby* v. *Griswold,* 147 Pac. (Ore.) 388. In an action for damages for breach of contract, where the vendee relied upon the defense that the vendor was unable to give a good title because the property was encumbered by a public road, the supreme court of California said: "As to such obvious burden the party proposing to buy, having full knowledge of the servitude and the necessity therefor as a means of egress and ingress to the premises, contracts subject to the physical and visible burden imposed upon the land." *Ferguson* v. *Edgar,* 171 Pac. 1061, 1062. See also 9 R. C. L. 737.

The reservation of the water in the stream appurtenant to government lot 6814 presents a question which must be dealt with on an entirely different basis. Any riparian water rights which may have been appurtenant to the property cannot be classified as an easement but are a part of the physical property and to those rights the rule of obvious easement does not apply. The reservation of the water rights might be inconsequential and in no wise detract from the value of the property, in which case the respondent cannot be heard to complain, because he is not injured, or it might be of small importance and immaterial to the enjoyment of the purchaser of the remaining property so that there should be a proportionate abatement in the agreed price equitable to both parties. The rule is recognized in 36 Cyc. 738. See also *Koon* v. *Dry Goods Co.,* 30 Haw. 313. And that it applies where the vendor is asking for specific performance is illustrated in *Willingham L. & T. Co.* v. *Moore,* 128 S. E. (Ga.) 751, 753; *Riley* v. *Wheat,* 187 N. W. (S. D.) 425; *Mansfield* v.

*Wiles,* 108 N. E. (Mass.) 901, 905; *McCourt* v. *Johns,* 53 Pac. (Ore.) 601, 603.

On the other hand, the authorities hold that equity will not compel specific performance by an unwilling vendee when the defect in quantity, title or estate is a substantial and material one, even though compensation is offered for the defect, since that would be to enforce a new contract upon the vendee. See 36 Cyc. 379.

By way of defense and the avoidance of liability in the present suit the respondent relied, *inter alia,* upon the existence of the reservation of water rights appurtenant to the property. The burden was therefore upon him to sustain that issue by submitting proof that the water rights reserved were of some value so that he could, to the extent of such value, have a reduction in the price for which otherwise he would be required to pay for the property or establish by evidence that the reservation of the water rights so substantially reduced the quantum of the estate to which respondent was entitled under the contract as to render it unjust and inequitable to compel him to take and pay for the lesser estate. The rule is that where a party alleges the existence of a fact as the basis of a defense the burden is always upon him to prove it. In other words, the burden of proof remains where the issue made by the pleadings places it. See Richardson on Evidence (4th ed.) 124; also *Blunt* v. *Barrett,* 124 N. Y. 117. If the water reserved was of any value it was incumbent upon the respondent to establish that fact. Although the *onus probandi* was upon him he chose to ignore the issue and failed to offer any evidence in support of it.

It is difficult to read the record in this case and resist the conclusion that the respondent attached no value to the water reserved by the government. In this state of the record we are not warranted in assuming that the respondent was injured by reason of the reservation.

The decision and decree of the court below accorded to respondent every right and consideration to which he was entitled. Complainant was required to treat every sale consummated by it as a cash transaction and to credit respondent with the full purchase price at the date of each sale. Complainant was also surcharged with all items of compound interest and the respondent's account was placed on a simple interest basis. In the restatement of the account between complainant and respondent required by the court below and made the basis of its decree, the respondent's liability, as alleged by complainant, was reduced by approximately $10,000.

Finding no merit in the appeal of respondent the decree of the circuit judge is affirmed and the appeal dismissed.

*A. G. M. Robertson* (*Robertson & Castle* on the briefs) for complainant.

*O. P. Soares* (also on the briefs) for respondent.