STATE OF HAWAII, by its Attorney General, Plaintiff-Appellee, Cross-Appellant, *v.* FRANK ELBERT MID-KIFF, et al., Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased, Defendants-Appellants, Cross-Appellees.

NO. 5327

DECEMBER 11, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON, JJ., AND CIRCUIT JUDGE LUM
IN PLACE OF KOBAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal arises out of an action by the State of Hawaii, under its power of eminent domain to acquire certain parcels of land at Waiau, Oahu, fee simple title to which was held by Midkiff et al. as Trustees of the Estate of Bernice Pauahi Bishop (hereinafter "Bishop Estate"). This condemnation is a partial taking of the Bishop Estate's holdings in the Ahupuaa of Waiau. The land taken consists of 48.966 acres in the configuration of a large "X" which is now the Waiau Interchange of the H-1 Interstate Freeway. Because of this

unusual configuration of the partial taking, Bishop Estate's remaining lands in the Ahupuaa of Waiau are severed into four remnants. There is no question raised as to the taking other than the amount of just compensation to which the Bishop Estate is entitled. The jury in this case found that the value of the 48.966 acres taken was $1,468,980; that the severance damages to the remainder amounted to $203,401.00 and that the special benefits to the remainder amounted to $1,015,314. The trial court then held that the verdict as to special benefits was excessive and a new trial should be granted, limited to the issue of special benefits. Defendant Bishop Estate has appealed from the trial court's holding and seeks in the alternative either an unlimited new trial or a judgment notwithstanding the verdict, or a judgment limiting the scope of the verdict.

The State of Hawaii, plaintiff-appellee herein is understandably opposed to the relief sought by Bishop Estate and has further cross-appealed the granting of even a limited new trial.

The issues to be resolved on appeal are: the motion for a judgment N.O.V., the nature of special benefits, the verdict form itself, the nature of a realignment, and the propriety of a partial new trial.

I

Defendant Bishop Estate's motion "[t]o enter judgment of no special benefits to the remaining Waiau land of said defendants notwithstanding the verdict herein" was not properly made under Rule 50(b) of the Hawaii Rules of Civil Procedure. Rule 50(b) reads as follows:

(b) *Motion for Judgment Notwithstanding the Verdict.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, *a party who has moved for a directed verdict* may move to have the verdict and any

judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for a judgment in accordance with his motion for a directed verdict. . . . (emphasis added).

The language "a party who has moved for a directed verdict . . ." clearly requires that a timely and proper motion for a directed verdict be made as a prerequisite to a motion for judgment N.O.V. See 5a J. Moore, *Federal Practice*, § 50.08 at 2357 (2d ed. 1971). No such motion for a directed verdict appears in the record. Nor does defendant's requested jury instruction 10A, which would have instructed the jury to find for defendant on the special benefits issue, constitute a motion for a directed verdict in compliance with Rule 50(a) H.R.C.P. The trial court correctly denied defendant's motion for judgment notwithstanding the verdict.

II

Defendant's requested instruction 10A (denied over defendant's objection) did however raise the issue of whether or not the state had adduced sufficient evidence to have the issue of special benefits submitted to the jury. Bishop Estate's requested instruction 10A reads as follows:

You are instructed that in this case the State of Hawaii as condemnor has provided no access between the proposed highway improvement directly to the remaining Bishop Estate land of Waiau, and that the available access between the remaining lands and the highway project is shared in common by the remaining Bishop Estate lands and various other lands in the neighborhood. Accordingly you are instructed as a matter of law that none of the remaining Bishop Estate lands of Waiau will be specifically benefitted by the construction of the proposed highway improvement by plaintiff State of Hawaii.

Defendant Bishop Estate apparently equates access with special benefits. It is true that in *Territory v. Mendonca*, 46

Haw. 83, 375 P.2d 6 (1962), this court held that no special benefits existed because there was no access that was not shared in common with other nonabutting landowners. *Supra* at 100. Access, however, is not the only possible special benefit that may accrue to a property in a partial taking. We cited with approval the following statement in *State Highway Com. v. Bailey*, 212 Or. 261, 319 P.2d 906 (1957):

> They [the jury] may consider evidence of improved outlet to market to said premises, *of higher and better use*, as for subdivision, residential or commercial purposes, frontage on a better road, modes of access, and in general any substantial evidence that the improvement will add to the convenience, accessibility, *use and value* of the land if such benefit is not shared by nonabutting lands. *Territory v. Mendonca, supra* at 99 (emphasis added).

The state has urged that when a partial taking enhances the remainder lands by creating a reasonable probability of rezoning to a higher use, the remnant parcels may be specifically benefitted by the taking. We agree. In the establishment of a market value for land actually taken in eminent domain proceedings "[t]he highest and best possible use of property is not confined to the use at the time of taking. Neither is it confined by the zoning at the time of the taking, if there is a reasonable possibility that there may be a rezoning." *Wolff v. Commonwealth of Puerto Rico*, 341 F.2d 945, 946 (1st Cir. 1965); *see also United States v. Meadow Brook Club*, 259 F.2d 41 (2d Cir. 1958). Since reasonable possibility of rezoning is a valid consideration in determining the market value of land actually taken, we see no reason why the same rule should not apply to establishing the market value of remnant parcels and thus the enhancement value attributable to the taking. The state must show, however, that any such enhancement specifically benefits the remnant parcel.

In the case at hand evidence was adduced which supported a finding that any reasonable possibility of rezoning was a result of the "peculiar relationship of the land in question to the public improvement." *Mendonca, supra* at 94 (citations omitted).

There was expert testimony that the remnants would probably be rezoned to a higher industrial use. The expert witnesses based their opinion on the irregular shape of the remnants and the unsuitability of the remnants for any other use due to their position on the freeway. Bishop Estate's own witnesses based their valuations on a probable rezoning.

III

Defendant Bishop Estate has also alleged prejudicial error in the formula used to determine special benefits. We agree. We find part 3 of the verdict form to be so confusing as to constitute reversible error.

The form used to determine special benefits in this case was

3. That special benefits . . . are as follows:

    1. Remnant A:

        (a) Value of remnant A with special benefits = *$57,100* per acre.

        (b) Value of remnant A without special benefits reduced by the severance damages = *$28,500* per acre.

        (c) Special benefits to remnant A is the difference of (a) and (b) or $28,600 per acre, or 13.629 acres at *$28,600* per acre = $389,789.[1]

It is clear that part (b) by reducing the remnant value by the amount of severance damages has the effect of increasing part (c), special benefits, by the amount of severance damages. Stated simply, the more you reduce (b) the more you increase (c) since (c) is the difference of (a) and (b). Under the relevant portion of HRS § 101-23, special benefits are set off against the value of the land taken *and* severance damages. The effect of increasing the setoff special benefits by the amount of severance damages is to create what accountants might term a "wash transaction." The use of this special benefits formula in part 3 of the verdict form deprived defendant Bishop Estate of the amount of severance damages that is Bishop Estate's statutory right under HRS § 101-23.

---

[1] Sections 2 and 3 of Part 3 were identical in format.

The net result of the formula used in part 3 of the verdict form is that condemnees will never recover severance damages.

In effect, the verdict form submitted to the trial court by the state was a modification of the "before and after rule." We have repeatedly criticized the "before and after rule" for its failure to distinguish between that enhancement value attributable to special benefits and that attributable to general benefits. *Territory v. Adelmeyer*, 45 Haw. 144, 363 P.2d 979 (1961); *Territory v. Mendonca, supra,* 46 Haw. 83, 375 P.2d 6 (1962).

The state has attempted to avoid this criticism of the rule by defining general benefits out of their formula. Thus the "before" value became "the value of remnant (A) without special benefits" and the "after" value became "the value of remnant (A) with special benefits." The jury was then supposedly able to find special benefits by substracting the "before" value from the "after." Under this clearly circular method of reasoning the jury must first determine special benefits in order to use the formula to find special benefits. The state's attempt to circumvent the shortcomings of the "before and after rule" serves only to illustrate the unsuitability of this method of valuation in a partial taking.

The law requires a distinction between special and general benefits. HRS § 101-23. The "before and after rule" fails by its very nature to make such a distinction:

> Theoretically, the "before and after" method is ideal as it is simple and complete. It includes in one lump sum the components of just compensation — value of the land taken plus severance damages to the remainder less special benefits arising out of the taking. All these elements of just compensation are inseparately [*sic*] moulded together in the result reached under the "before and after" method. *Territory v. Adelmeyer*, 45 Haw. at 149.

Clearly, a method of valuation that does not distinguish between special and general benefits does not meet the test of fairness that is fundamental to a determination of just compensation.

The determination of what shall constitute a special

benefit, to be used as an offset to the value of the property taken under the limitation that only special benefits shall be so used, is governed by the equitable principle which serves to justify the limitation, namely, that it is unfair for a land owner to be taxed specially through the reduction or refusal of compensation by offsetting benefits which his neighbors, whose lands are not taken, nonetheless receive free of charge. It is to avoid the unfairness of making one man pay in land for that which another receives free that special benefits are narrowly conceived. *Territory v. Mendonca,* 46 Haw. at 94.

The trial court recognized the inequity of the award and found the award of special benefits to be grossly excessive and unconscionable. This unfair result is to be expected when the "before and after" method is the method of determining special benefits, and severance damages are erroneously considered.

This is not to say that the "before and after" valuation is inadmissible or irrelevant per se. The "before and after" method is prejudicial when used as the format for a jury to follow in its determination of special benefits. The "before and after" method is admissible as evidence of total enhancement to support an expert's opinion that a certain benefit has indeed increased the value of the condemnee's remaining lands. The state must however prove a direct relationship between any amount of the total enhancement and the special benefit alleged.

Defendant Bishop Estate alleged as further error that "[t]he requirement that the valuations (other than severance damages) be on a per acre basis is prejudicial." We find this allegation to be totally without merit where as in this case the format of Parts 1 and 2 of the verdict merely conformed to the manner of proof.

IV

Defendant Bishop Estate further moved "[t]o enter judgment considering the special benefits found by the verdict herein only insofar as the value of such benefits to

the remnants of said defendants' Waiau land shall not exceed the severance damages to such remnants respectively found by the verdict herein.'' Defendant-appellant contends that judgment should be entered in accordance with that section of HRS § 101-23 which reads:

If condemnation is for the purpose of *widening or realigning any existing highway or other public road,* the owner of the property condemned shall be entitled to full compensation for the property actually taken and special benefits shall be considered only insofar as the value of the benefits shall not exceed the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvements in the manner proposed by the plaintiff. (emphasis added).

There is no factual issue on the realignment question. It is not disputed that prior to the taking Moanalua Road ran roughly parallel to Kamehameha Highway near the East Loch of Pearl Harbor. At a point Honolulu side of the Waiau Interchange (the subject of this taking) Moanalua Road veered makai to join Kamehameha Highway. At that same point of veering away, a private cane haul road continued across Waiau into Waimano. Prior to the date of taking the public was permitted to use this cane haul road. After the taking a new road following the route of the cane haul road was named "Moanalua Road.'' The portion of Moanalua Road which veered away to join Kamehameha Highway was renamed "Kuleana Road.'' There was opinion testimony that the new Moanalua Road was a realignment of the old Moanalua Road. We reject this testimony as being conclusory of a matter of law which is for the court alone to determine. The trial court denied defendant's motion to limit judgment, in effect ruling that these undisputed facts do not as a matter of law constitute a "realignment.'' We agree with the trial court.

V

Finally the issue of a partial versus a complete new trial must be decided. Under HRS § 101-23 just compensation, in a

nonrealignment case, may be summed up by the formula: Just compensation = (value of the land taken + severance damages) — special benefits. 3 Nichols, *Eminent Domain,* § 8.6206 at 90 (3d ed. 1965). Each of these three elements of just compensation should be independent of the others. The elements of just compensation are severable and distinct issues in themselves.

In the case at hand we have a special verdict with a separate determination of each element of just compensation, rather than a net award of just compensation. In such an instance we feel that a new trial is necessary only for that issue erroneously determined.[2] We are not convinced that unfairness to Bishop Estate will result. Nor are we convinced that the errors in part 3 of the verdict form tainted parts 1 and 2.

Affirmed and remanded for a new trial limited to the issue of special benefits.

*Robert E. Brown* and *J. Russell Cades (Cades Schutte Fleming & Wright* of counsel) for defendants-appellants, cross-appellees.

*Daniel S. Ukishima,* Deputy Attorney General *(George Pai,* Attorney General, with him on the briefs) for State of Hawaii, plaintiff-appellee, cross-appellant.

---

[2] *Cf.* State v. Davis, 53 Haw. 582, 591, 499 P.2d 663, 670 (1972) remanded for a partial new trial limited to severance damages.