ANN E. STAHL, Plaintiff-Appellant, Cross-Appellee *v.* DADI BALSARA, also known as DR. DADI BALSARA, Defendant-Appellee, Cross-Appellant

NO. 6082

DECEMBER 18, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Plaintiff-appellant, cross-appellee, Ann E. Stahl (hereinafter appellant) appeals from the trial court's order and judgment, both dated July 17, 1975. The order granted a judgment N.O.V. against appellant in favor of defendant-appellee, cross-appellant, Dadi Balsara, also known as Dr. Dadi Balsara (hereinafter appellee); and the judgment dismissed both the appellant's complaint and the appellee's counterclaim. Appellant further appeals from the order dated September 5, 1975, entered by the court below which denied

her motion for new trial. Appellee cross appeals from that part of the order of July 17, 1975, which denied his motion for new trial as to damages on his counterclaim and which granted, *sua sponte,* a judgment N.O.V. as to appellee's counterclaim. We affirm the order of the trial court which granted appellee's motion for judgment N.O.V. on appellant's complaint, reverse the order which granted, *sua sponte,* a judgment N.O.V. on appellee's counterclaim, and affirm the orders denying new trials to both appellant and appellee.

On August 10, 1973, appellant filed in the court below a complaint against appellee in which she sought damages against appellee based upon fraud. In her complaint appellant alleged in substance that appellee was a world renowned yoga expert, astrologer, palmist and para-psychologist; that she had telephoned appellee to engage his services in reading her palm and in attempting to foretell appellant's future; that appellant's first appointment with appellee was on or about June 7, 1971, and thereafter appellant saw appellee at irregular intervals through August, 1972. Appellant alleged that during that period of time appellee falsely and fraudulently represented to appellant that in order for appellant's daughters to be protected against pregnancy out of wedlock, it was necessary for appellant to purchase pendants for each of her daughters; that appellant would never have to worry about money because she would be receiving $50,000.00 checks through the mail; that appellant's income would triple in twenty-one days; and that appellant would become the owner of three apartment buildings, a home on Tantalus and a four bedroom condominium. Appellant also alleged that these representations were known by appellee to be false when made and were made with intent to deceive appellant to induce her to purchase an automobile, jewelry, clothing and other personal effects for appellee's use and benefit; that appellee additionally received from appellant monies in excess of the value of services which appellee rendered to appellant and her daughters; and that appellant believed all of the promises, predictions and representations made to her by appellee at the times they were made and in reliance thereon,

appellant was induced to use her own funds and borrow moneys from others which totaled $14,516.25, and which was expended for the appellee's use and benefit as aforesaid. Appellant further alleged that she made repeated demands upon appellee to repay the above sum and/or for the return of the jewelry and other properties, but that appellee has refused to repay the said sum or to return such jewelry and properties, except for the sum of $2,900.00.

Appellee answered denying the complaint and filed a counterclaim in which he sought damages against appellant based upon libel and/or slander and/or defamation of character. In his counterclaim, the appellee admitted that he and appellant had enetered into a professional relationship during the middle of the summer of 1971, until some time during the year 1972; that during that period appellant had made to appellee various gifts in the form of items of apparel, other personal gifts and monetary payments; that for reasons unknown to appellee, appellant became dissatisfied with the appellee's services and embarked on a campaign to destroy the appellee personally, professionally and socially, and to drive him from the State of Hawaii, the United States of America, and from his chosen profession; that in connection with such campaign appellant engaged in the utterances of numerous untruths about appellee to persons in position to affect appellee's status on visa as well as to persons in position to affect his financial well being, as well as to representatives of appellee's national consulate in Honolulu designed for the purpose of destroying appellee's relationship with his own consulate, and that the appellant also engaged in the publication of various false and untrue written statements about appellee for the same purpose and to the same sorts of people, attempted interference with the appellee's contractual relations with a radio station and numerous clients of appellee.

Both the complaint and counterclaim prayed for special damages, general damages and punitive damages. After the case had been submitted to the jury and during its deliberation it sent an inquiry to the court whether the jury could find in favor of appellant on her complaint as well as in favor of

appellee on his counterclaim. In response the court with the approval of both parties instructed the jury that it could in fact find in favor of each party on their respective claims. On June 26, 1975, the jury returned a verdict for the appellant on her complaint and for appellee on his counterclaim. The total verdict for each party was $3.00, or $1.00 for special damages, $1.00 for general damages and $1.00 for punitive damages.

Appellee, having moved for a directed verdict at the close of all the evidence, filed a motion on July 7, 1975, for judgment N.O.V. against appellant on her complaint, and for new trial as to damages on appellee's counterclaim. On July 17, 1975, the court entered an order granting appellee's motion for judgment N.O.V. on appellant's claim, and the court further ordered, *sua sponte*, a judgment N.O.V. on appellee's counterclaim. Although this order indicates that appellee's motion for new trial was denied,[1] it, and the record, failed to so state expressly. Under the circumstances and to clear the record we hold that the order of July 17, 1975, by implication, denied appellee's motion for new trial.

Thereafter, on July 17, 1975, final judgment was entered which dismissed the appellant's complaint and appellee's counterclaim with each side to bear her and his respective costs. On July 28, 1975, appellant filed her motion for new trial, which was denied on September 5, 1975. The motion stated that it was based upon the file in this case, the evidence adduced at trial, the affidavit and memorandum of points and authorities attached to the motion. An examination of the affidavit and the memorandum reveals that the sole ground upon which appellant requested a new trial was based entirely upon jury instruction 1A which was appellant's instruction given by the court over the objection of appellee.

---

[1] The order of the trial court filed on July 17, 1975, states in the title thereof: "Order granting defendant's motion for judgment notwithstanding verdict and denying defendant's motion for new trial and granting judgment notwithstanding verdict as to defendant's counterclaim."

148

## I.

Appellant argues that the evidence adduced in this case was sufficient to send this case to the jury for its consideration. We do not agree.

This court stated in *Peine v. Murphy,* 46 Haw. 233, 238, 377 P.2d 708, 712 (1962), that:

> Fraud is never presumed. Where relief is sought on account of fraudulent representations, the facts sustaining the charge should be clearly and satisfactorily established. [Citations omitted.] When representations are made to form the basis of relief, they must be shown to have been made with respect to a material fact which was actually false. [Citations omitted.]

There is no dispute that the parties met for the first time on or about June 7, 1971, when appellant went to see appellee at his room in the Ala Moana Hotel in Honolulu. Appellant was then 47 years old, married and the mother of three daughters, the oldest being 15 years of age. At the time of her first meeting with appellee, appellant was already familiar with astrologers, having previously contacted and associated with eight or nine of these astrologers on the mainland. Appellant met appellee at irregular intervals for professional consultations until December of 1972. The appellant testified at trial that appellee told appellant that in two and a half years she would become a millionaire and own much property; that it was necessary for appellant to purchase a pendant from appellee for the sum of $1,800.00[2] for the purpose of protecting appellant's daughter from being raped; and that if appellant purchased a car for appellee,[3] then within three weeks

---

[2] Appellant purchased from appellee the pendant for $1,800.00 but there is no allegation in appellant's complaint as to the value of the pendant, nor is there any testimony in the record what value has been attributed to this article.

[3] In January, 1972, appellant purchased a Cougar for appellee. The initial payment for this automobile and two subsequent monthly payments were made by appellant. The insurance on the automobile and special license for the vehicle were also paid by appellant. From the time of the purchase of this automobile, appellant was the owner of all interest in and to this vehicle, until August, 1972, when a transfer of appellant's interest was made to appellee. Appellant also admitted at trial that she has received from appellee all moneys spent by her in connection with the purchase of this car.

her income would triple.[4] Further, in the instant case, the record is absolutely bare as to any evidence to show whether the appellee had any knowledge of or knew at the time when the above representations were communicated by appellee that they were false.

We hold that each of these alleged misrepresentations relates to the happening of future events, having nothing to do "with respect to a material fact which was actually false." *Peine v. Murphy*, 46 Haw. at 238, 377 P.2d at 712.

Under these circumstances, we would apply to the instant case the general rule "that fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise." 37 C.J.S. *Fraud*, § 11. *See also Waterhouse Tr. Co. v. Freitas*, 33 Haw. 139, 144 (1934); *Jeffcoat v. Phillips*, 534 S.W.2d 168 (Tex. Civ. App. 1976); *Sinclair v. Sullivan Chevrolet Company*, 31 Ill.2d 507, 202 N.E.2d 516 (1964); *Leece v. Griffin*, 150 Colo. 132, 371 P.2d 264 (1962); *Ambrose v. Brooks*, 109 Ga. App. 881, 137 S.E.2d 573 (1964).

Furthermore, we hold that the representations made by appellee to appellant constituted mere prognostication or prophecy as to happening of future events and did not concern an existing material fact and it was utterly unreasonable for appellant to rely upon such representations.[5] 37 C.J.S.

---

[4] Appellant further testified that she believes she was mesmerized by appellee and while she was under appellee's power, he caused her to have sexual intercourse with him and caused her to make numerous gifts of jewelry and other personal property to appellee, including $2,000.00 cash for appellee's nose surgery. Appellee countered by adducing testimony which showed that in September, 1972, soon after appellant had demanded the return of her gifts, he had returned to the appellant all of the items actually received by him.

[5] At trial, appellee also introduced as exhibits a series of letters purportedly in the handwriting of appellant, addressed to appellee, the sordid contents of which revealed that appellant was in intimate relationship with appellee, at least from February 21, 1972, through December of that year, although appellee expressly denied such relationship.

*Fraud,* § 11. *Peine v. Murphy, supra; Adamson v. Maddox,* 111 Ga. App. 533, 142 S.E.3d 313 (1965).

Thus, the court below properly granted appellee's motion for judgment N.O.V. on appellant's complaint.

In view of our adverse ruling with respect to appellant's contention that the trial court erred in granting appellee's motion for judgment N.O.V. on appellant's complaint for fraud, there is no occasion for us to discuss appellant's second contention of error, that the trial court erred in its denial of her motion for new trial.

## II.

We now consider the alleged errors of the trial court as raised in the cross appeal by appellee. It is appellee's contention that the court erroneously granted, *sua sponte,* a judgment N.O.V. against appellee on his counterclaim, even though appellant had not moved for a directed verdict at the close of all the evidence as set forth in HRCP, Rule 50(b).[6]

We interpreted in *State v. Midkiff,* 55 Haw. 190, 192, 516 P.2d 1250, 1252 (1973), that the use of "language [in Rule 50(b) that] 'a party who has moved for a directed verdict . . .' clearly requires that a timely and proper motion for a directed verdict be made as a prerequisite to a motion for judgment N.O.V." Appellant concedes that no motion for a directed verdict against appellee was made on his counterclaim at the

---

[6] HRCP, Rule 50(b) reads as follows:

(b) *Motion for Judgment Notwithstanding the Verdict.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

close of all the evidence. Under such a state of the record, and, furthermore, in view of the lack of any motion by appellant for such judgment N.O.V., we hold that the court erred in granting a judgment N.O.V. against appellee on his counterclaim.

The appellee further contends that the trial court's refusal to grant his motion for new trial on the issue of damages as to his counterclaim was error because the amounts as to this item were made in disregard of the court's instructions or by ignoring the appellee's undisputed evidence.

In the instant case, the appellee had opened his astrological consultation services during the latter half of 1972. The appellee's own testimony was that his monthly income from the practice of astrology and palmistry dropped during the month of December, 1972. This followed the beginning of appellant's campaign to ruin his business. However, while one of the appellee's own witnesses testified that a friend would not consult with appellee because of the adverse rumors concerning appellee, generated by appellant, all of the other witnesses testifying with respect to this subject matter said that they and other clients of the appellee did not believe the appellant's defamatory statements and were satisfied with appellee's advice. The jury could have believed that the appellee's decline in income did not result from the appellant's alleged defamation. Appellee's own testimony indicates that the only indicia of loss was the drop in monthly income in December, 1972, just prior to appellee's return to the Orient, and the low receipts during the three months after his return therefrom in the summer of 1973, after approximately a half-year's absence from Hawaii. He did not produce any witnesses who were clients who refused to go back to him because of the appellant's alleged defamatory allegations, or prospective clients who did not consult appellee because of these alleged defamatory remarks or writings. Neither did appellee produce any records of earnings or losses, though he testified that he had an accountant. Appellee's claimed loss of income for July, August and September, 1973, could have been the result of his six months' absence from Hawaii.

While appellee's testimony on mental anguish was unrefuted, nevertheless, the determination of whether a party suffered mental pain and mental anguish is a factual issue to be determined by the jury. *See Bachran v. Morishige*, 52 Haw. 61, 66, 469 P.2d 808, 811 (1970). The verdict in the instant case seems to indicate that the jury did not believe the appellee's allegation of mental pain and suffering which allegedly resulted from the appellant's defamation. While the appellee produced substantial testimony as to the detrimental change in his physical and emotional condition, only he testified that the etiology was the appellant's actions.

We conclude and hold that it cannot be said that the manifest weight of the evidence requires a re-examination of the damages which the jury returned in appellee's favor. *Petersen v. City and County*, 53 Haw. 440, 496 P.2d 4 (1972). This should be especially so since, "the jury is generally considered to be the supreme arbiter on the question of damages . . . where the element of wounded sensibilities and loss of public esteem play a part . . ." *Walrus Manufacturing Co. v. Excel Metal Cabinet Co.*, 161 F.Supp. 840, 843-844 (W.D.N.Y. 1957).

As we have said "[b]oth the grant or denial of a motion for new trial . . . is within the trial court's discretion and will not be reversed absent a clear abuse of discretion." *Harkins v. Ikeda*, 57 Haw. 378, 380, 557 P.2d 788, 790 (1976); *see also Petersen v. City and County*, 53 Haw. at 442, 496 P.2d at 6-7; *Struzik v. City and County*, 50 Haw. 241, 437 P.2d 880 (1968); *Johnson v. Sartain*, 46 Haw. 112, 375 P.2d 229 (1962); *Rainbow Island Productions, Ltd. v. Leong*, 44 Haw. 134, 351 P.2d 1089 (1960); *Pooler v. Stewarts' Pharmacies, Ltd.*, 42 Haw. 618 (1958). The trial court properly exercised its discretion in denying appellee's motion for new trial.

Accordingly, we reverse both order and judgment, dated July 17, 1975, insofar as the order granted, *sua sponte*, a judgment N.O.V. on appellee's counterclaim and the judgment dismissed appellee's counterclaim; however, we affirm the order which granted appellee's motion for judgment N.O.V. on appellant's complaint, and which denied a new trial on the counterclaim as well as the order which denied

appellant's motion for new trial. This case shall be remanded for the entry of an appropriate order and judgment consistent with this opinion.

*Thomas T. Watts (Kemper & Watts)* for Plaintiff-Appellant, Cross-Appellee.

*David C. Schutter (Schutter, O'Brien & Weinberg)* for Defendant-Appellee, Cross-Appellant.

### CONCURRING OPINION OF KIDWELL, J.

I concur in the foregoing opinion, but consider it desirable to say something more with respect to the rule that fraud may not be predicated upon unfulfilled predictions. I do not understand the opinion to deny that a representation by a self-proclaimed soothsayer that he or she has psychic powers which enable the future to be foretold might be an actionable representation if made with knowledge of its falsity, although the prediction of the soothsayer might not in itself be actionable. That question is not before us in this case, however, in the absence of any evidence that appellee was aware that he lacked power to foretell appellant's future.