JADE EMORY, Plaintiff-Appellant,
v.
HOUSING AND COMMUNITY DEVELOPMENT CORPORATION OF HAWAII ("HCDCH"), formally known as HAWAII HOUSING AUTHORITY, ("HHA"), STATE OF HAWAII and LINDA LINGLE, in her official capacity as Governor of the State of Hawaii, Defendants-Appellees.
No. 28693.
Intermediate Court of Appeals of Hawaii.
November 30, 2009.
On the briefs:
Jade Emory Plaintiff-Appellant Pro Se.
John C. Wong Diane K. Taira Deputy Attorneys General Department of the Attorney General, State of Hawai`i for Defendants-Appellees.

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Fujise, and Leonard, JJ.)
Plaintiff-Appellant Jade Emory (Emory), pro se, appeals from the Judgment filed on October 12, 2007, in the Circuit Court for the First Circuit (circuit court).[1] Emory filed a complaint in the circuit court against Defendants-Appellees Housing and Community Development Corporation of Hawaii (HCDCH), State of Hawaii, and Governor Linda Lingle (collectively, the "Defendants"), alleging claims of fraud, malpractice, gross mismanagement, retaliation against a whistleblower, discrimination in housing against a person with physical handicaps, and intentional infliction of physical and emotional hardship. After a bench trial, the circuit court found in favor of Defendants on all claims.
Emory's opening brief does not comply with the requirements of Hawaii Rules of Appellate Procedure (HRAP) Rule 28(b)(2008). Among other things, it does not contain a subject index or table of authorities; a concise statement of the points of error; or a section setting forth the applicable standards of review. In addition, the opening brief fails to apprise this court with any reasonable clarity or coherence of the specific errors Emory is claiming on appeal or the reasons, with citations to relevant legal authority, that this court should overturn the circuit court. These deficiencies alone provide a sufficient basis for us to reject her appeal and affirm the circuit court. See O'Connor v. Diocese of Honolulu, 77 Hawaii 383, 385, 885 P.2d 361, 363 (1994) ("[F]ailure to comply with HRAP [Rule] 28(b)(4) is alone sufficient to affirm the judgment of the circuit court."); HRAP Rule 28(b)(7) ("Points not argued may be deemed waived."); Hawaii Ventures, LLC v. Otaka, Inc., 114 Hawaii 438, 478, 164 P.3d 696, 736 (2007) (stating that "an appellate court is not obliged to address matters for which the appellant has failed to present discernible arguments").
To the extent we can decipher her claims, it appears that Emory is contending that the circuit court erred in: 1) granting Defendants' motions in limine; 2) partially granting Defendants' Hawaii Rules of Civil Procedure (HRCP) Rule 52(c)(2000) motion for judgment as a matter of law; 3) refusing to allow Emory to reopen her case after she rested; and 4) ruling against Emory on her remaining claims at the completion of trial. We affirm the Judgment of the circuit court.

I.
In 1995, Emory qualified for rental subsidies under the HCDCH[2] Section 8 program, which utilized federal money to provide qualified individuals with a monthly rental subsidy, paid to qualified landlords, in accordance with the requirements of the United States Department of Housing and Urban Development (HUD). Under this program, Emory was responsible for locating an appropriate housing unit, negotiating rent with the landlord, and submitting the lease agreement to HCDCH. If her HCDCH case worker approved the agreement, HCDCH would inspect the unit for compliance with HUD requirements, and if it was approved, HCDCH would pay the qualified landlord Emory's subsidy.
Although an individual living alone such as Emory would usually only qualify for a studio unit, Emory was approved for a subsidy for a one-bedroom unit. Between 1995 and about February 2002, Emory lived in various one-bedroom units. In 1998, Emory was awarded a ten percent increase in her rental subsidy. However, in October 1998, HUD reduced the subsidy levels. In February 2000, HCDCH increased Emory's subsidy for a one-bedroom unit by ten percent.
In September 2001, Emory's landlord gave notice that he planned to raise the rent to Emory's unit beyond the subsidy and that Emory's lease, which terminated on November 30, 2001, would not be renewed. Emory's landlord eventually ordered Emory from the unit in early 2002, and she began living in her car. In the meantime, HCDCH extended Emory's subsidy voucher to April 12, 2002, but warned her that she must find an approved unit or her voucher would be cancelled without further notice.
In April 2002, Dr. Amy Kogut, Emory's physician, wrote in a letter submitted to HCDCH that Emory suffered from "severe disabling multiple chemical sensitivities," required housing away from "smoke and chemical exposures," and needed access to a rural housing area to decrease the risk of such exposures. In May 2002, Dr. Kogut wrote in a letter submitted to HCDCH that Emory required a two- or three-bedroom house because she suffered from severe chemical sensitivities. This was apparently the first time that Emory had provided HCDCH with a medical opinion that she needed more than a one-bedroom unit. In June 2002, HCDCH approved Emory's request for an increase in her subsidy to that applicable to a two-bedroom unit. Emory, however, did not find an approved unit at the available subsidy.
HCDCH extended Emory's subsidy voucher to June 11, 2002, and then to September 9, 2002, each time warning Emory that her failure to find an approved unit would result in cancellation of her subsidy voucher without further notice. HCDCH assigned William Ayers (Ayers), an HCDCH employee, to assist Emory in finding a unit. Ayers notified Emory of several active listings, but she rejected them for having "too many druggies" or for having "pesticides and dust." Ayers continued to offer assistance to Emory even after her voucher expired in September 2002.
In 2003, Emory filed a complaint with HUD against HCDCH, alleging that HCDCH had failed to provide her with reasonable accommodation in that HCDCH had declined to further extend her voucher. In October 2004, HUD found no reasonable cause to believe that HCDCH had engaged in a discriminatory housing practice against Emory. In September 2005, Emory filed suit in circuit court.

II.
We conclude as follows:
1. The circuit court did not err in ruling on Defendants' motions in limine. Defendants filed two motions in limine: the first to preclude Emory's witnesses from stating legal conclusions or opinions on matters for which they lacked first-hand knowledge; and the second to preclude Emory from asking witnesses their personal opinions and preferences regarding the provision of housing assistance and the legal obligations related thereto. The circuit court granted the first motion in limine, subject to the required foundations under the Hawaii Rules of Evidence (HRE) being established. As to the second motion in limine, the circuit court noted that certain opinions are permitted under the HRE if the required foundations are laid. The circuit court granted the second motion, subject to the appropriate foundations being laid before any opinion was rendered. The circuit court was not wrong in its conditional grant of these motions in limine.
2. The circuit court did not err in partially granting Defendants' HRCP Rule 52(c) motion for judgment as a matter of law. After Emory rested her case-in-chief, the circuit court dismissed Emory's whistleblower and fraud claims against Defendants and all of Emory's claims against Governor Linda Lingle. Emory did not provide any legal or evidentiary support for her whistleblower claim, and the circuit court properly dismissed it.
As to her fraud claim, Emory did not adduce evidence that HCDCH represented or guaranteed that it would secure suitable housing for her. Moreover, she failed to produce evidence establishing the elements required to support her claim of fraud based on alleged misrepresentations. See Stahl v. Balsara, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978); TSA International Ltd. v. Shimizu, 92 Hawai`i 243, 256, 990 P.2d 713 (1999); Shoppe v. Gucci America, Inc., 94 Hawai`i 368, 386-87, 14 P.3d 1049, 1067-68 (2000). We also agree with Defendants that HCDCH's actions in twice extending Emory's voucher after warning her that her voucher would be cancelled without further notice did not provide a basis for a fraud claim.
Emory's claims against Governor Lingle were based on Governor Lingle's failure to grant Emory's request that Emory be given State agricultural land on which to live. Emory did not provide any basis for concluding that Governor Lingle had an obligation to give Emory State agricultural land. The circuit court properly dismissed all claims against Governor Lingle.
3. Any error in the circuit court's refusal to allow Emory to reopen her case after she rested was harmless. Emory asserts that she rested by mistake because she did not know that resting meant she could not call witnesses. Emory also asserts that she had a witness, Dr. Kogut, who was available to testify when Emory rested. We conclude that any error in the circuit court's refusal to allow Emory to reopen her case to call Dr. Kogut was harmless.
Defendants stipulated to the admission of letters Dr. Kogut had written in April and May of 2002 that had been submitted to HCDCH. In these letters, Dr. Kogut wrote that Emory "has suffered for years from severe disabling multiple chemical sensitivities" and "has severe respiratory reactions to multiple inhaled chemicals and substances" that made it impossible for her to live close to other people in apartments. In these letters, Dr. Kogut opined that Emory needed "access to a rural housing area" and "ample space such as a 2- or 3-bedroom house." Dr. Kogut's testimony would have been cumulative of the statements she made in her letters. Thus, Emory's inability to reopen her case to call Dr. Kogut did not affect Emory's substantial rights.[3] Moreover, given the compelling evidence presented by Defendants of HCDCH's extensive efforts to assist and accommodate Emory, additional evidence of Emory's medical condition would not have affected the outcome of the case.
4. The circuit court did not err in finding against Emory, at the completion of trial, on her remaining claims of malpractice, gross mismanagement, discrimination in housing against a person with physical handicaps, and intentional infliction of physical and emotional hardship. The circuit court's decision on these claims was supported by substantial evidence.

III.
The October 12, 2007, Judgment of the circuit court is affirmed.
NOTES
[1] The Honorable Karen S.S. Ahn presided.
[2] HCDCH later became known as the Hawaii Public Housing Authority.
[3] We note that Emory did not call any witnesses in rebuttal.